[Crim. No. 2350.   Fourth Dist.   Dec. 21, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. IVAN
HOUSER, Defendant and Appellant.

Charles E. Ward, Public Defender, and Frank Loria, Deputy Public Defender, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General and Robert P. Samoian, Deputy Attorney General, for Plaintiff and Respondent.

FINLEY, J. pro tem.*—This is an appeal from a judgment following a jury verdict adverse to defendant on his plea of not guilty by reason of insanity.

By information appellant was charged with assault with intent to commit murder. (Pen. Code, § 217.) The information also charged three prior felony convictions which were admitted at the trial.

Appellant went to a jury trial on the issue raised by his plea of not guilty by reason of insanity. The jury found appellant sane at the time charged and he was sentenced to state prison for the term prescribed by law.

*Facts*

On December 12, 1964, appellant and one Strand were drinking at appellant's apartment. The drinking had been going on for several days. Appellant's sister lived next door.

About 9 p.m. on December 12, appellant appeared at the sister's residence with a butcher knife and announced: "I killed the S.B." A search next door revealed that he had indeed knifed Strand, but Strand did not die. He lived to appear as a witness for defendant at the trial. The police were called and appellant was taken into custody and the charges filed.

At the trial, two court-appointed psychiatrists testified in the People's case and one psychologist testified for the defendant. Before trial the prosecutor moved for production of a copy of the report of the defendant's psychiatrist and it was ordered produced over the objection of defense counsel.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

In the course of his direct examination of the two psychiatrists called by the People, the prosecutor asked each to define "malingering." After eliciting this definition from each doctor, the prosecutor did not ask them their opinion as to whether appellant was malingering. Both doctors testified that appellant knew right from wrong and understood his surroundings at the time of the offense charged.

Dr. Crowley, one of the People's psychiatrists, in the course of his direct examination, was asked to explain the basis for his opinion that appellant was sane. In his answer, which covers over three pages of transcript, the doctor mentioned appellant's criminal history. Objection was made, followed by a motion to strike. The motion to strike was overruled and the jury instructed that the testimony could be considered by the jury only as it was used by the doctor, that is, as part of appellant's past history in arriving at a diagnosis of his mental condition at the time of the act in question. No further reference to appellant's criminal record was made.

The psychiatrist called by the defense testified that appellant did not know the nature and quality of his acts or that if he did he was still unable to tell right from wrong.

### Errors Urged on Appeal

I. The court erred in ordering production of a copy of the report of the defense psychiatrist.

II. The prosecutor was guilty of prejudicial misconduct when he asked for a definition of "malingering" and did not then seek to connect it to appellant.

III. The testimony of Dr. Crowley regarding appellant's criminal history was (a) misconduct on the part of the prosecutor; (b) requiring the granting of appellant's motion for a mistrial.

■ Treating Point III first, whether evidence admitted by the court was properly before the jury we note first that the type of plea entered by a defendant in a criminal action governs in great measure the admissibility of evidence. A plea of not guilty by reason of insanity without also a plea of not guilty admits the commission of the offense charged. (Pen. Code, § 1010.) Consequently we are not here concerned with many of the technical rules of evidence relating to a not guilty plea. While recognizing that the opinion of an expert witness cannot rise above the reasons upon which it is founded we also recognize that in a field such as that of

psychiatry the layman is in poor position to pass valid judgment upon the factors which may enter into the expert's opinion. A trial court is surely entitled to rule with considerable liberality on such matters and an appellate court should differ with caution.

Appellant argues that Penal Code, section 1025 and the decisions construing its effect establish that the doctor's testimony as to appellant's criminal history was prejudicial error requiring reversal. He cites in support the case of *People* v. *Hudgins*, 59 Cal.App.2d 175, 179 [138 P.2d 311]. That case holds that in a prosecution on a not guilty plea to violation of California Vehicle Code section 502, where defendant offered upon arraignment to admit a prior conviction, any subsequent reference to such previous conviction by the clerk, the prosecution or the trial court would be in direct conflict with the provisions of Penal Code, section 1025 and therefore reversible error.

Appellant has not produced authority nor advanced any compelling reason why such a rule should apply in a trial where the defendant's sanity rather than his guilt is the sole issue. Prejudice, the obvious reason for the rule in a trial for the determination of guilt has no comparable application in a probe of mental status. It seems only reasonable that a history of conduct, past as well as present, would be an important consideration in an appraisal of mental status. There occurs to us no cogent reason to expect that prejudice in a sanity hearing would be incited to the point of unfairness by knowledge of defendant's criminal record. Penal Code, section 1025 was not designed to exclude relevant evidence. (*People* v. *Spencer*, 60 Cal.2d 64 [31 Cal.Rptr. 782, 383 P.2d 134].) The court properly instructed the jury of the purpose for which the evidence was admitted. This is not one of those cases where the conclusion seems inescapable that an instruction by the court to a jury will not be properly heeded by it. We find no error in the court's refusal to strike the doctor's reference to appellant's history of criminal conduct, particularly in view of the court's instruction which properly focused the jury's attention to its limited significance.

Turning now to appellant's second specification of error we find no prejudice resulting to appellant from the prosecutor's questions concerning the definition of the word "malingering". Appellant contends that for the prosecutor to have asked the doctors to define the word without at the same time relating it to appellant by "follow-up, was to

plant in the minds of the jurors the idea that Mr. Houser was a malingerer and had deliberately falsified the stories he had told all the doctors who had examined him and all the police officers who had questioned him without offering any supporting evidence whatsoever.''

Respondent notes in this connection that appellant did not in the trial court object to the questions concerning malingering nor did he at any time move to strike the answers given by either of the court-appointed doctors. Where no objection is made in the trial court to the introduction of testimony its propriety cannot be then questioned on appeal. (*People* v. *Lopez*, 213 Cal.App.2d 668, 675 [28 Cal.Rptr. 912] ; *People* v. *Herrera*, 209 Cal.App.2d 748, 752 [26 Cal.Rptr. 409] ; *People* v. *Banos*, 209 Cal.App.2d 754, 759 [26 Cal.Rptr. 127].)

Furthermore, after these questions had been asked without objection of the court-appointed doctors who testified, appellant's counsel cross-examined them on the point. He also interrogated Dr. Minard, his own expert witness, concerning his examination of defendant as follows:

''Q. Did you observe any evidence whatsoever of malingering? A. Nothing I could see along that line.

''Q. Do you believe that this defendant was malingering when he told you his story? A. No, I don't.''

Therefore, apart from any adverse implication which may have resulted from the prosecutor's questions the only testimony in the record is to the contrary. Also with the definition of malingering before them without objection the jury was in position to properly draw from all of the evidence its own conclusion on a relevant point.

Referring to defendant's Point I above, his contention is that in ordering appellant to give a copy of Dr. Minard's report to the prosecution prior to the time Dr. Minard testified, the court violated the attorney-client relationship between appellant and his attorney. In support of this contention he cites *Jones* v. *Superior Court*, 58 Cal.2d 56 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213] and maintains that that case ''actually holds that defendant is required only to support [*sic*] [supply] the name of the doctor.'' In this contention defendant is too restrictive however for on page 62 of the opinion we find this language: ''Insofar as the trial court's order herein requires petitioner to reveal the names and addresses of witnesses he intends to call and to produce reports and X-rays he intends to introduce in evidence to support his defense of im-

potence, it does not violate the privilege against self-crimination. Nor to this extent does it violate the attorney-client privilege. It simply requires petitioner to disclose information that he will shortly reveal anyway. Such information is discoverable.''

The *Jones* case came before the Supereme Court on a proceeding in prohibition to restrain the superior court from enforcing an order requiring petitioner to produce medical reports and other documentary material in a rape prosecution wherein the defendant claimed impotence as a defense. The court granted the writ stating: ''The order, however, is not limited to the discovery of such information, (referred to in the quote above) and therefore cannot be enforced in its present form.''

In *People* v. *Lopez,* 60 Cal.2d 223 [32 Cal.Rptr. 424, 384 P.2d 16], wherein defendant Lopez and another defendant, Winhoven, were found guilty of one count of murder and four counts of attempted murder, defendant complained of errors in connection with the court's ruling on motions for discovery. Therein the court ordered defendants to produce, *inter alia* (1) the names and addresses of persons defendants anticipated calling as alibi witnesses; (2) *written statements or notes of statements by such witnesses*; and (3) recordings, transcriptions of recordings and written statements or notes of statements of witnesses who had testified at the preliminary hearing. Neither the record nor the briefs in the case indicated that any information was given to the People as a result of the court's order. Nevertheless defendants contended that the making of the order denied them a fair trial. The court said: ''The contention is without merit. This court has recently held that, within certain narrow limitations, the People have the right to discovery of defense evidence. (*Jones* v. *Superior Court* (1962) 58 Cal.2d 56, 59, 61-62 [22 Cal.Rptr. 879, 372 P.2d 919].) Even if that were not the rule, however, defendants are in no position to complain. As hereinabove mentioned, neither the record nor the briefs indicate that any information was furnished to the People as a result of the subject order. It is manifest that the mere granting of the order did not deprive defendants of a fair trial.''

The situation here and those in the *Jones* and *Lopez* cases are only remotely comparable. In the *Jones* case the decision involved the validity of a discovery order in a proceeding to stay its execution. The purpose was to *prevent* the invasion of a protected confidential relationship. Although a similar

confidential relationship is involved here this is not a proceeding in prohibition.

Appellant claims that because a protected relationship was violated by the court's order his trial was unfair. He does not claim that evidence illegally obtained was allowed into evidence. Indeed, as in the *Lopez* case, our examination of the record does not disclose nor do the briefs make it plain that Dr. Minard's report was ever delivered to the prosecution pursuant to the court's order. In addition we are not here faced with a consideration of the many technical rules of exclusion which apply to a trial on the issue of guilt where commission of the crime by the accused is the basic question. Here appellant has not shown nor are we persuaded that appellant was either deprived of any constitutional right or that the trial was rendered unfair to him by the discovery order, the question being not one of actual guilt of commission but of the excusability of such guilt. No violation of the privilege against self-incrimination is an issue. Even assuming a violation of the attorney-client relationship which might have been reached by application for a writ of prohibition we are not convinced that invasion of a right, fundamental to the fairness of appellant's trial, has been shown.

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.