[Crim. No. 4901. First Dist., Div. Two. May 13, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. SIDNEY DUGAS, Defendant and Appellant.

246

R. Eugene Vernon, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Horace Wheatley, Deputy Attorneys General, for Plaintiff and Respondent.

SHOEMAKER, P. J.—Defendants Sidney Dugas and John Baker were jointly charged by indictment with robbery and burglary. After a trial by jury, defendant Dugas was convicted of both offenses charged, and defendant Baker was convicted of burglary. Defendant Dugas alone has appealed from the judgment of conviction, and from the order denying his motion for new trial. The latter order is nonappealable.

At approximately 3 a.m. on July 22, 1964, San Francisco Police Officers Forni and Clark received an all-points broadcast that two Negro males had committed a burglary at 1925 Pierce Street and were fleeing from the scene with stolen property consisting of hi-fi equipment and records. They were told that one of the men was wearing a red sweater and that they had driven west on Pine Street in a red two-door hardtop

automobile which was possibly a Buick and which had a license number beginning with "C", three holes in each fender and two cracked or broken rear windows. As the officers were proceeding to the scene, they observed a car which matched the description, forced it to a stop and ordered the occupants, defendants Dugas and Baker, to get out of the car. Dugas was wearing a red sweater, and there were numerous phonograph records on the back seat of the car. Both men initially attempted to flee but were apprehended, placed under arrest and searched. A wallet which bore the name Peter Schuler and which contained cards and a check also bearing that name was found in Dugas' right rear pocket.

Defendant Dugas was subsequently identified by Peter Schuler, the victim of the burglary and robbery. John Feniger, the man who reported the crime to the police, was shown the two defendants and the car, and stated, "That is the car . . . that's the man." He subsequently identified a photograph of defendant Baker.

Schuler testified that he had returned to his Pierce Street apartment around midnight on July 21, 1964, having been absent for approximately two hours. As he entered the apartment, he was struck by defendant Dugas and rendered unconscious. When Schuler awoke, he was lying on the floor and was bound hand and foot with electrical cord which he had left in the apartment. Dugas began repeatedly kicking him about the face and head, and Schuler ultimately feigned unconsciousness in order to avoid further abuse. Before doing so, however, he had an opportunity to observe Dugas and saw that he was wearing a red sweater and that he was a well-built Negro with regular features and a mustache. After Dugas left, Schuler managed to free himself. Missing from the apartment were the wallet found on Dugas, a suitcase, numerous records, a phonograph, a typewriter, an electric shaver, a pair of cuff-links, bongo drums, and sundry canned goods. A watch and an undetermined amount of cash had been taken from his person.

Feniger testified that shortly after 2 a.m. on July 22, 1964, he saw two Negro men putting a suitcase and a box into a red car parked in the driveway of the Pierce Street apartment house. Feniger subsequently observed light shining into the hallway from Schuler's apartment, and he then saw the two men coming down the hall carrying hi-fi equipment. They put the equipment into the car and drove away. Feniger then entered Schuler's apartment and found that he was incoherent

and appeared to have been badly beaten. He immediately returned to his own apartment, telephoned the police, and furnished them with the information which was subsequently relayed to Officers Forni and Clark.

Defendant Baker testified that on the evening of July 21, 1964, Dugas had asked him to help move some clothes. When Baker agreed, the two men got into Baker's car and drove to the Pierce Street apartment building. Dugas instructed Baker to park in the driveway and then got out of the car, entered the apartment building, and was gone for approximately 15 minutes. Baker then entered the apartment building and encountered Dugas standing in the upstairs hallway with a stack of records. Baker carried the records to the car, while Dugas carried a phonograph. Dugas subsequently left the car again and returned with a suitcase. He then instructed Baker to drive to a second apartment building, at an unspecified location, where the two men unloaded the car, with the exception of the records, and carried the various items into the building.

Defendant Dugas flatly denied all participation in the crimes charged and stated that he had spent the hours preceding his arrest at various bars and coffee shops.

■ Defendant first contends that the phonograph records found in the car ought to have been excluded from evidence on the ground that they were the product of an illegal search and seizure. He tacitly concedes that his arrest was lawful but asserts that since the records were not actually removed from the car until after it had been towed away and impounded, the records were the product of a search which was too remote from the time and place of the arrest to be deemed incidental thereto. This argument is ridiculous.

Officer Forni testified that he observed the records in the back seat of the car at the time of the arrest, but intentionally left them where they were in order to preserve any fingerprints which might be found on the records or in the back seat. The car and its contents were immediately taken into police custody, with the vehicle being towed to the Hall of Justice and locked in the impound room.

Under such circumstances, it may well be doubted that the records, which were in plain view in the back seat, were the product of a search at all. Assuming that they were, such search was clearly incidental to the arrest. *Preston* v. *United States* (1964) 376 U.S. 364 [84 S.Ct. 881, 11 L.Ed.2d 777], upon which defendant relies, is clearly distinguishable, since

in that case the incriminating items which were held to be the product of an illegal search were not in plain view but were concealed in the glove compartment and trunk of the automobile. The police made no search of the vehicle at the time defendant and his companions were arrested and did so only after the car had been driven to the police station and towed to a garage.

■ Defendant next contends that the court deprived him of due process by ordering him to disclose the name and address of a potential witness before said witness testified. This contention is wholly without merit.

In *Jones* v. *Superior Court* (1962) 58 Cal.2d 56, 61-62 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213], the court held that an order requiring the defendant in a criminal case to disclose the names and addresses of witnesses whom he intends to call in connection with a particular defense does not violate either the privilege against self-incrimination or the attorney-client privilege. Defendant attempts to distinguish the *Jones* case by asserting that in the instant case, the discovery order was made at a time when he had not yet indicated that he would attempt to establish any affirmative defense. However, the record reveals that the prosecutor specifically requested the names of any witnesses defense counsel intended to produce ''in any affirmative defense.'' The court similarly limited its ruling and informed defense counsel that he was only required to produce the names and addresses of witnesses whom he intended to call in connection with an affirmative defense, such as alibi. Defense counsel ultimately revealed that he intended to call one Marguerite Allen, whose exact address was unknown to him. As it ultimately developed, the witness did not testify for defendant, but for his codefendant, Baker. Under such circumstances, it is apparent that the court's ruling was entirely proper and that, in any event, it resulted in no prejudice to defendant.

■ Defendant next asserts that the court committed reversible error in failing to instruct the jury that robbery requires a specific intent to steal. The record shows that the court defined robbery as ''the felonious taking of personal property of any value in the possession of another from his person or his immediate presence against his will, accomplished by means of force or fear.'' The court failed to inform the jury that the crime of robbery also requires a specific intent to steal—to permanently deprive the owner of his property. However, the court did discuss specific intent in connection

with the burglary charge, stating that "the crime of burglary in this case presupposes a necessary element in the existence in the mind of the perpetrator of the specific intent to steal, and unless such intent so exists the crime of burglary cannot be committed."

 Even in the absence of a request therefor, the court's failure to instruct that the crime of robbery requires a specific intent to steal constitutes error in any case where the defendant's intent to steal is not beyond question. (*People* v. *Stone* (1963) 213 Cal.App.2d 260, 263-264 [28 Cal.Rptr. 522].)

 However, where the evidence pertaining to the defendant's conduct leaves no doubt whatever that he possessed the requisite state of mind, such error is not prejudicial. (*People* v. *Stone, supra,* at p. 264; *People* v. *Seay* (1960) 179 Cal.App. 2d 362, 363 [3 Cal.Rptr. 769].)

 In the instant case, the evidence is susceptible of no other interpretation but that the defendant did possess the required intent to steal. Moreover, in view of the above-mentioned instructions on burglary, the fact that the jurors also convicted defendant of that crime shows that they did in fact find that he possessed such intent. Under these circumstances, a reversal is not required under article VI, section 4½, of the California Constitution.

Defendant next asserts that the court subjected him to double punishment in violation of Penal Code, section 654, by sentencing him for both robbery and burglary. Defendant contends that the two crimes were committed as part of one continuous course of conduct and were incident to the same objective. He relies upon *Neal* v. *State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839]. The People deny that the two crimes comprised one indivisible transaction and assert that the evidence justifies the conclusion that defendant's original intent was to burglarize an empty apartment and that the robbery occurred as an afterthought when Schuler returned and surprised him in the commission of the burglary.

The evidence as to the manner in which defendant gained access to Schuler's apartment is not altogether free from conflict. Schuler's testimony at the trial was clearly sufficient to support a finding that defendant was already inside the apartment when Schuler returned. However, there was also evidence that Schuler had previously told Officer Forni that both defendants had followed him into the building and had forced their way into his apartment after he opened the door.

■ Since the trial judge sentenced defendant for both burglary and robbery, he presumably resolved the above-mentioned evidentiary conflict in favor of Schuler's testimony at the trial and concluded that the two crimes did not comprise one indivisible transaction. His determination in this regard cannot be disturbed on appeal.

In *People* v. *Houghton* (1963) 212 Cal.App.2d 864 [28 Cal. Rptr. 351], defendant entered a gasoline service station, threatened the attendant with a revolver and forced him to empty the cash register. He ordered the attendant to carry the money into the restroom, followed him into the restroom and took the money from him. He then ordered the attendant to face the wall and put his hands behind him, assured him that he would not hurt him, and shot him in the back. Defendant was convicted and sentenced for both robbery and assault with intent to commit murder, and such sentences were upheld on appeal. The court concluded that the defendant's acts were not indivisible because the assault was committed after the robbery had already been accomplished and the circumstances were such that the shooting could have been an afterthought.

■ In the instant case, the evidence clearly supports a finding that the burglary, consisting of the breaking and entering with intent to steal, had already been accomplished when Schuler returned to the apartment. (*People* v. *Devlin* (1904) 143 Cal. 128, 129-130 [76 P. 900].) Up until this point, defendant might have had no intent to commit a robbery, as opposed to a theft, and might well have broken into the apartment only after he had taken steps to ascertain that it was unoccupied at the time. It is equally possible that defendant's intent to commit a robbery and to forcibly deprive Schuler of articles in his immediate possession did not arise until the latter returned and entered the apartment. Under such circumstances, it is apparent that the two crimes cannot be deemed part of an indivisible transaction incident to the same objective and that there is accordingly no merit to defendant's contention that he was wrongly subjected to double punishment. Defendant's reliance upon *People* v. *Jones* (1962) 211 Cal.App.2d 63 [27 Cal.Rptr. 429], and *In re Dowding* (1961) 188 Cal.App.2d 418 [10 Cal.Rptr. 392], is misplaced, since in each case the evidence conclusively established that the burglarious entry was made with the specific intent of robbing the occupant of the structure wrongfully entered.

Defendant next asserts that his court-appointed counsel deprived him of due process of law by stipulating that if

defendant were convicted of robbery, it would be robbery in the first degree, and that the jury should be so instructed. Defendant concedes that a shod foot may be deemed to constitute a deadly weapon, but asserts that the evidence was conflicting as to whether he kicked Schuler or struck him with his fists. He relies upon certain testimony that the shoes which he was wearing at the time of his arrest contained no trace of liquid blood, and also relies upon Officer Forni's testimony that Schuler had initially told him that he was struck by fists and by an unknown hard object. Defendant asserts that this evidence was in sharp conflict with Schuler's testimony at the trial and that his counsel ought to have insisted that the jury be allowed to determine whether or not defendant had used a weapon other than his fists.

An examination of the record discloses that defendant's counsel informed the court, upon entering into the stipulation complained of, that he felt it was in his client's best interests to remove the evidence pertaining to the assault from the jurors' consideration and therefore eliminate the possibility that they might place undue emphasis upon evidence which he considered highly inflammatory. He also expressed the view that the evidence did establish that the robbery had been accomplished with the use of a deadly weapon. Defendant was present at the time and made no objection to the stipulation.

It is the general rule that counsel have the right to stipulate relative to any of the steps of an action or proceeding. (*People* v. *Garvey* (1928) 93 Cal.App. 497, 503 [269 P. 702].) Since defendant makes no claim that the stipulation was entered into by mistake, inadvertence, fraud or misrepresentation, he may not now obtain relief from such stipulation. (*People* v. *Zavaleta* (1960) 182 Cal.App.2d 422, 430 [6 Cal. Rptr. 166].)

Defendant's final contention is that the prosecutor was guilty of prejudicial misconduct by reason of having asked an improper question during his cross-examination of defendant. The record discloses that the prosecutor asked defendant the following questions: "Q. Have you ever been convicted of a felony? A. Yes, sir. Q. What was the charge? A. Burglary. Q. Served time in San Quentin for that? A. Yes, sir."

Defendant concedes that the prosecutor was entitled to ask the first two questions concerning the fact of the prior felony conviction and the nature of the crime, but asserts that the third question exceeded the scope of permissible inquiry and

was asked for the sole purpose of prejudicing defendant in the eyes of the jurors.

■ It is settled that as a means of impeachment, a defendant testifying in his own behalf may be asked whether he has previously been convicted of a felony but may not be questioned relative to the details or circumstances surrounding the offense or the length of time served and the conditions or circumstances surrounding the defendant's parole. (*People* v. *Miller* (1961) 188 Cal.App.2d 156, 170 [10 Cal.Rptr. 326]; *People* v. *Wynn* (1941) 44 Cal.App.2d 723, 732 [112 P.2d 979].)

■ In the instant case, the prosecutor did not inquire into the details and circumstances surrounding the prior offense and similarly did not inquire as to the length of time served or the conditions or circumstances surrounding defendant's parole. Although defendant had admitted a prior felony conviction for burglary in response to the prosecutor's first two questions, the prosecutor may have felt that the third question was necessary in order to conclusively establish that the crime was a felony under Penal Code, section 17, by reason of defendant's having been sentenced to state prison and not to county jail. In *People* v. *Applegate* (1949) 91 Cal.App.2d 163, 170-171 [204 P.2d 689], the court held such a question to be entirely proper.

Even assuming that the question complained of was improper, reversal is not required under article VI, section 4½, of the California Constitution. The case was not a close one, and the evidence of defendant's guilt was overwhelming.

The purported appeal from the order denying defendant a new trial is dismissed, and the judgment of conviction is affirmed.

Agee, J., and Taylor, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 6, 1966.