[Civ. No. 34105. Second Dist., Div. Five. July 3, 1969.]

PAUL DENNIS McGUIRE, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

584

Herbert Hafif and Hafif & Shernoff for Petitioner.

No appearance for Respondent.

Evelle J. Younger, District Attorney, Harry Wood and Maurice H. Oppenheim, Deputy District Attorneys, for Real Party in Interest.

ALARCON, J. pro tem.*—The petitioner, Paul Dennis McGuire, has applied to this court for a writ of prohibition to restrain the respondent superior court from enforcing a discovery order and an order appointing psychiatrists to examine the petitioner and to report their findings and medical opinions to the court.

### Factual Background

The petitioner is charged with murder (Pen. Code, § 187) and inflicting corporal injury (Pen. Code, § 273d). A plea of not guilty was entered to these charges on April 24, 1968 "with right of additional pleas reserved." The trial was set for June 6, 1968.

On June 6, 1968, the matter was continued for trial at the request of petitioner's counsel. At the same proceeding, the district attorney announced his intention to make a motion

*Assigned by the Chairman of the Judicial Council.

for discovery concerning the reports of two psychiatrists appointed by the court on March 26, 1968, to examine the petitioner. The psychiatrists were appointed pursuant to Evidence Code section 730. According to the March 26, 1968, minute order, the reports were ordered to be "confidential to defendant's attorney."

On August 5, 1968, the district attorney advised the court that if there was to be "any affirmative defense type of psychiatric testimony put on, that would be to [*sic*] the nature of either insanity, diminished capacity, or inability to understand constitutional rights and to make an intelligent waiver thereto [*sic*] the People would like the opportunity to have additional psychiatrists appointed on this particular point if there is going to be any such defense presented and, of course, if there is not, then the motion would not be timely."

The court then inquired of the petitioner's counsel whether the defense intended to raise the issue of insanity at the time of the commission of the offense, present insanity, or mental illness by medical standards. Petitioner's counsel advised the court that the only issue the petitioner would raise at the trial concerning his mental state was that of diminished capacity. He would not rely on an insanity defense, nor was petitioner claiming present insanity or that he was mentally ill by medical standards.

On September 3, 1968, petitioner's counsel advised the court that the defendant would raise the issue of diminished capacity, not to show a lack of capacity to formulate a requisite mental state of the crimes charged against him but for the limited purpose of proving that the petitioner lacked the capacity to make a knowing and intelligent waiver of his constitutional rights at the time he was interrogated by the police.

The prosecutor then moved for discovery of the reports of Dr. Abraham Wodinsky and Dr. Frederick Hacker, which earlier had been ordered to be submitted only to the petitioner's counsel as confidential.[1] In addition, the prosecutor

---

[1] The prosecution had knowledge of these psychiatrists and of the existence of their confidential reports because the trial court had appointed these experts on March 26, 1968, to examine the defendant and to make a report of the findings to defense counsel. Thus, the prosecutor is not seeking to determine if the petitioner was examined by psychiatrists. Nor did the prosecution's motion for discovery seek to require that the petitioner admit that the statements contained in the experts' reports which may be attributed to the petitioner were in fact uttered by him. (See *Jones* v. *Superior Court*, 58 Cal.2d 56, 60 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213].)

requested the appointment of psychiatrists to examine the petitioner. Hearing on the motion for discovery and for the appointment of experts was continued to October 14, 1968. On that date, the court issued the following order:

"In the matter of People versus McGuire it is my understanding that the state of the record at the present time is to the effect that the People have brought a motion to discover certain information presently in the possession of the defendant or the defendant's counsel which exists in connection with the defendant's defense of diminished capacity which has been indicated to this Court that the defendant will present at the time of trial. It's my further understanding that the defendant does not intend to present any issue as to present sanity nor does he intend to present any issue as to not guilty by reason of insanity but that the medical issue will be limited to that of diminished capacity."

"At this time the Court will make the following order: Counsel for the defendant will submit to the District Attorney no later than November 4, 1968 the names of all witnesses defendant intends to call as well as all reports, X-rays, electroencephalograms, diagnostic studies or other documentary evidence defendant intends to introduce into evidence in support of defendant's affirmative defense of diminished capacity.

"The Court at this time, pursuant to Section 730 of the Evidence Code appoints Dr. George Abe of the Metropolitan State Hospital at Norwalk, Dr. Alvin Davis, 1245 Glendon Avenue, West Los Angeles, and Dr. A. R. Tweed, 5309 Southwestern Avenue, Los Angeles, to examine the defendant for the following purposes:

"The Court will note that prior examination contained an examination as to whether or not the defendant was mentally ill by medical standards. Therefore, one, is the defendant mentally ill by medical standards; two, did the defendant have the mental capacity to form the specific intent to commit the crimes charged; three, did the defendant have the mental capacity to deliberate; four, did the defendant have the mental capacity to premeditate; five, did the defendant have the mental capacity to harbor malice; six, did the defendant have a diminished capacity to achieve the state of mind requisite for the commission of the crime or crimes charged. The Court will authorize the doctor or doctors to have electroencephalographic studies made and perform whatever other diagnostic studies in their best judgment is [sic] required or advisable

for the purpose of the examination. The Court will request that the initial examining doctor transmit to the other doctors' the electroencephalographic study if one is made and any other diagnostic study which might be made in order to avoid unnecessary expense if that is practical or feasible. If not, and if in the judgment of the later examining doctors such studies are required or advisable they are authorized to have them performed. A copy of the preliminary transcript will be provided the doctors by the District Attorney's office prior to examination and the transcript should be reviewed—or read rather by each doctor before interviewing the defendant. Defendant will make arrangements directly with each doctor for an appointment and shall call each doctor no later than November 4, 1968, which is Monday.

''The doctors' reports shall be filed with the Court prior to November 18, 1968. No copies of the reports shall be sent to either counsel. The reports shall be made available to counsel only after further order of Court. The doctors shall not discuss their reports or their findings or examinations with either counsel except on further order of Court.

'' Counsel for the defendant may attend the examinations as an observer only and not as a participant and only if in the opinion of the examining doctors his presence would not hinder or operate to reduce the effectiveness of the examination or hinder the establishment of the rapport frequently [*sic*] necessary in a psychiatric examination.''

When the trial judge finished his recitation of the foregoing order, he was requested by the prosecutor to require the psychiatrists to determine ''the ability of the defendant to understand and intelligently waive any admonishment of rights given to him under the Miranda decision; his mental capacity at the time to understand.'' The request was granted in the following language:

''I'll add to the areas of examination, area number seven: Did the defendant have the requisite mental capacity to knowingly and intelligently waive any rights which he had, constitutional or statutory in nature, by reason of the Miranda decision or other cases in that area prior to making any statement to any investigating officers or other police officers.''

In response to a question raised by the district attorney concerning the scope of the discovery order, the trial judge stated that the discovery order did not include the reports of a psychiatrist which were in the possession of petitioner's counsel, which report he did not intend to introduce into evi-

dence although he did intend to call the psychiatrist as a witness.

Counsel for the petitioner advised the court that he would instruct his client not to communicate with the three psychiatrists appointed in response to the prosecution's request.

### Petitioner's Contentions

The petitioner raises the following contentions in attacking the validity of the trial court's order:

1. The trial court's order requiring petitioner's counsel to submit to the district attorney the names of all witnesses the petitioner intends to call in support of his affirmative defense of diminished capacity violates the petitioner's privilege against self-incrimination.

2. The trial court's order requiring petitioner's counsel to submit all reports, X-rays, electroencephalograms, diagnostic studies, or other documentary evidence he intends to introduce into evidence in support of the petitioner's affirmative defense of diminished capacity violates the petitioner's privilege against self-incrimination in that such documents contain statements of the petitioner concerning the charges.

3. The order of the court appointing psychiatrists to examine the petitioner pursuant to Evidence Code section 730 forces the petitioner to submit to a psychiatric examination in the absence of counsel and without the advice or consent of counsel, in violation of the petitioner's right to have counsel present at all stages of the proceedings against him. In addition, the petitioner urges that requiring the petitioner to submit to psychiatric examination will force the petitioner to make statements as to the reason for his emotional upset at the time of the arrest which may force him to incriminate himself.

### The Discovery Order

The discovery order is limited to the names of witnesses petitioner intends to call as well as medical reports and records he intends to introduce into evidence "in support of defendant's affirmative defense of diminished capacity."

*Jones* v. *Superior Court,* 58 Cal.2d 56 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213], is the fountainhead of the rule granting the prosecutor a right to pretrial discovery in a criminal case. The Supreme Court declared in *Jones, supra,* that pretrial discovery "should not be a one way street" but should be available to the prosecution as well as the defense for the same end, the promotion of the "orderly ascertain-

ment of the truth'' (*Joncs* v. *Superior Court, supra,* 58 Cal. 2d 56, 60).

In *Jones, supra,* the trial court granted the defendant's motion for a continuance based on an affidavit that he needed more time to gather medical evidence to prove that he could not be guilty of rape because he was impotent as the result of injuries suffered several years before the alleged crime. The prosecution filed a motion for discovery of '' (1) the names and addresses of any and all physicians and surgeons subpoenaed to testify on behalf of the petitioner with respect to the certain injuries suffered by him in 1953 and 1954 and bearing on the question of whether or not petitioner is impotent; (2) the names and addresses of all physicians who have treated petitioner prior to the trial; (3) all reports of doctors or other reports pertaining to the physical condition of petitioner relating to said injuries and bearing on the question whether petitioner is impotent; and (4) all X-rays of petitioner taken immediately following the 1953 and 1954 injuries.''

The petitioner in *Jones* applied for a writ of prohibition to restrain enforcement of the trial court's order on the grounds that the discovery order violated his privilege against self-incrimination and the attorney-client privilege.

■ The Supreme Court granted the petition and ordered a peremptory writ to issue for the reason that the order was so sweeping that it included reports of physicians to whom petitioner was sent for examination by his attorney to assist in the preparation of his defense. Such reports are covered by the attorney-client privilege, since they are considered to be reports from a client to his attorney through the examining physician (*Jones* v. *Superior Court, supra,* 58 Cal.2d 56, 61; *San Francisco Unified School Dist.* v. *Superior Court,* 55 Cal. 2d 451, 455 [11 Cal.Rptr. 373, 359 P.2d 925; 82 A.L.R.2d 1156]; *City of San Francisco* v. *Superior Court,* 37 Cal.2d 227, 236-238 [231 P.2d 26, 25 A.L.R.2d 1418]).

In reaching its conclusion on the merits of the petition, the Supreme Court indicated that the prosecution is entitled to discover the names of witnesses a defendant in a criminal case "*intends to call*" and any reports and X-rays he *intends to introduce in evidence*" in support of a particular affirmative defense (Italics added.)

■ The discovery rules set forth in the *Jones* case can be summarized as follows:

1. The prosecution is entitled to discover *in advance of a trial* the names and addresses of witnesses the defendant intends to call in support of a particular affirmative defense.

2. The prosecution may discover the reports of a physician to whom the defendant went for *advice and treatment* where the defendant intends to introduce the report into evidence in support of a particular affirmative defense.

3. The prosecutor may discover reports, X-rays and the like prepared by the doctors to whom the defendant was sent by his attorney *for examination* which the defendant intends to offer in support of a particular affirmative defense. If the defendant does not intend to introduce such evidence the disclosure of the existence of such material would. be protected by the privilege against self-incrimination and the attorney-client privilege.

The issue of the right of the prosecutor to discovery was again raised before the Supreme Court in *People* v. *Lopez*, 60 Cal.2d 223 [32 Cal.Rptr. 424, 384 P.2d 16]. The defendants on 'an automatic appeal from a murder conviction complained that the trial court erred in granting a pretrial motion for the discovery of '' (1) the names and addresses of persons defendants anticipated calling as alibi witnesses (2) written statements or notes of statements by such witnesses (3) recordings, transcriptions of recordings and written statements or notes of statements of witnesses who had testified at the preliminary hearing.'' The defendants contended the granting of this order denied them a fair trial.

In disposing of this issue, the Supreme Court stated at page 244: ''The contention is without merit. This Court has recently held that, within certain narrow limitations, the People have the right to discovery of defense evidence. (*Jones* v. *Superior Court* (1962) 58 Cal.2d 56, 59 [4], 61-62 [9] [22 Cal.Rptr. 879, 372 P.2d 919].) Even if that were not the rule, however, defendants are in no position to complain. As hereinabove mentioned, neither the record nor the briefs indicate that any information was furnished to the People as a result of the subject order. It is manifest that the mere granting of the order did not deprive defendants of a fair trial.''

*Lopez* strongly suggests that the *Jones* rule will be applied to the discovery of the names and addresses of witnesses the defendant ''anticipates'' calling in support of an alibi defense. In addition, the right of the prosecution to discovery may also apply to notes, statements, recordings, or transcripts

of recordings of witnesses who have previously testified at an earlier stage of the proceedings.[2]

The next appellate discussion of the right of a prosecutor to discovery appears in *People* v. *Houser,* 238 Cal.App.2d 930 [48 Cal.Rptr. 300]. In the *Houser* case, *supra,* the defendant entered a single plea of not guilty by reason of insanity to a charge of assault with intent to commit murder. The defendant contended in his appeal from a jury verdict finding him sane at the time of the commission of the offense that the trial court erred in granting the prosecutor's motion for the discovery of the report of a defense psychiatrist prior to his testimony. The defendant argued that the *Jones* case, *supra,* requires only the discovery of the name of a doctor who has examined the defendant at the request of counsel, since his report would be protected by the attorney-client privilege. In disposing of this issue the court in *Houser, supra,* said at p. 934: "In support of this contention he cites *Jones* v. *Superior Court,* 58 Cal.2d 56 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R. 2d 1213] and maintains that that case 'actually holds that defendant is required only to support [*sic*] [supply] the name of the doctor.' In this contention defendant is too restrictive however for on page 62 of the opinion we find this language: 'Insofar as the trial court's order herein requires petitioner to reveal the names and addresses of witnesses he intends to call and to produce reports and X-rays he intends to introduce in evidence to support his defense of impotence, it does not violate the privilege against self-incrimination. Nor to this extent does it violate the attorney-client privilege. It simply requires petitioner to disclose information that he will shortly reveal anyway. Such information is discoverable.' " The court held that no violation of the defendant's rights had been shown, since the record did not disclose that the report had been delivered to the prosecution pursuant to the court's order.

The latest decision touching on the question of prosecution discovery is *People* v. *Dugas,* 242 Cal.App.2d 244 [51 Cal. Rptr. 478]. In the *Dugas* case, the defendant was convicted of robbery and burglary. His defense was alibi. The trial court granted the prosecutor's motion for the discovery of "the names and addresses of witnesses whom he [the defendant] intended to call in connection with an affirmative defense, such as alibi." The defendant contended on appeal that the

---

[2] The decision in *Lopez* does not indicate whether any witnesses were called by the defendant at the preliminary hearing.

trial court deprived him of due process by requiring him to reveal the name and address of a potential witness although the defendant had not yet indicated he would attempt to establish an affirmative defense.

The court in *Dugas, supra,* found this contention without merit and upheld the discovery as falling within the limited discovery permitted by *Jones* v. *Superior Court, supra.* However, the court also pointed out that since the witness whose name was revealed did not testify for him but for his codefendant, the ruling of the trial court granting discovery was not prejudicial to the defendant.

In *Dugas, supra; Houser, supra;* and *Lopez, supra,* the reviewing courts, while indicating that *Jones* v. *Superior Court, supra,* was the controlling authority, also found that the trial record failed to disclose any prejudice because there was no showing that the order was complied with or that the evidence was used by the defendant to support an affirmative defense.

In the case before us, we must decide the constitutional questions raised by the discovery order, without benefit of the hindsight available on an appeal after conviction, as to the actual impact of the challenged order.

The discovery order in the case before us is limited to a disclosure of the names of witnesses the petitioner intends to call and documents he intends to introduce into evidence in support "of defendant's affirmative defense of diminished capacity." The order falls squarely within the rule permitting limited discovery concerning affirmative defenses authorized by *Jones* v. *Superior Court, supra.*

In *Jones, supra,* the Supreme Court characterized impotency as an "affirmative" defense to the charge of rape. The defense of impotency, or a lack of physical capacity to effect slight penetration of the victim which is necessary for the proof of the crime of rape (see Pen. Code, § 263) does not require the entry of a special plea in order that the defendant may raise the issue at his trial. A defendant charged with rape may introduce medical evidence of impotency in order to raise a reasonable doubt as to his physical capacity to commit the crime charged.

It would appear that the term "affirmative defense," as used in *Jones,* includes evidence which is offered by the defendant to prove the nonexistence of a fact which is essential to the proof of the corpus delicti (proof of impotency to establish a lack of penetration in a rape case—*Jones* v. *Supe-*

*rior Court, supra*) or evidence which shows that the defendant is not the perpetrator of the crime (alibi—*People* v. *Lopez, supra*).

Under California case law, the term "diminished capacity" is used to refer to a lack of capacity "to achieve the state of mind requisite for the commission of the crime" (*People* v. *Anderson,* 63 Cal.2d 351, 364 [46 Cal.Rptr. 763, 406 P.2d 43]). The theory that a mental disease or defect not amounting to insanity may negate the existence of a crime was adopted by the California Supreme Court in 1949 in the case of *People* v. *Wells,* 33 Cal.2d 330 [202 P.2d 53], and revitalized in 1959 in *People* v. *Gorshen,* 51 Cal.2d 716 [336 P.2d 492].

Diminished capacity is an "affirmative defense" as this concept is used in *Jones,* since evidence of diminished capacity goes to the capacity of a defendant to achieve a mental state which is a necessary element of the corpus delicti of a particular crime (*People* v. *Anderson, supra*).

The discovery order challenged by the petitioner is restricted to the disclosure of evidence concerning the "affirmative defense" of diminished capacity. Accordingly, the discovery order comes within the scope of the type of discovery contemplated in *Jones.* The order is limited to witnesses the petitioner intends to call and evidence he intends to introduce. Therefore, the petitioner is not required to divulge the contents of privileged psychiatric reports unless he intends to disclose these reports himself at the trial to support an affirmative defense based on the theory of diminished capacity.

If the petitioner does not intend to introduce the reports of Dr. Frederick Hacker and Dr. Abraham Wodinsky in support of a defense of diminished capacity, he is under no compulsion to disclose the contents of the reports.

Petitioner's counsel has indicated to the trial court that he does not intend to invoke the. *Wells-Gorshen* defense of diminished capacity to raise a reasonable doubt as to his capacity to form the mental states required for the pending charges. Therefore, the prosecution cannot obtain the psychiatric reports since the petitioner does not intend to waive at the trial his attorney-client privilege as to the reports or his privilege against self-incrimination as to any statement concerning the alleged crimes he may have made to the psychiatrists.

 Under a discovery order requiring the defendant's attorney to disclose evidence in support of an affirmative defense he intends to introduce at the trial, obviously defense counsel has no evidence to disclose where he does not intend to introduce an affirmative defense. Should the defendant's attorney subsequently decide to introduce evidence of an affirmative defense which comes within the scope of the discovery order and the time limitation therein specified he must furnish such evidence to the prosecution. In the instant case the discovery order requires that defense counsel submit the requested information by November 4, 1968. Should the prosecutor still seek to obtain the information *covered by the discovery order* a new date or time limitation should be set by the trial court. At the hearing to fix a time within which defense counsel must comply with the discovery order the trial court can again inquire if the defense intends to rely on the affirmative defense of diminished capacity.

The effectiveness of the *Jones* rule is dependent upon the integrity and ethics of defense counsel, because compliance with a valid, prosecution-inspired discovery order is not required unless counsel intends to call witnesses or to introduce evidence within the scope of the order. Under the issues presented to this court by the petition for a writ of prohibition, we are not required to decide what must be done if counsel fails to communicate or misrepresents his intention to call a witness or to introduce evidence required by a discovery order.

 In his brief, petitioner's counsel contends that the discovery order requires that he divulge privileged psychiatric reports because of his announced intention to introduce psychiatric evidence concerning his client's lack of capacity to understand and to knowingly and intelligently waive his constitutional rights. However, the trial court's discovery order does not reach such evidence. The discovery order is limited to evidence of the affirmative defense of "diminished capacity." As discussed above, the defense of diminished capacity refers to evidence which is introduced to raise a doubt as to *guilt* and not to evidence concerning the defendant's ability to understand and waive constitutional rights. The trial court clearly differentiated between diminished capacity as an affirmative defense and a lack of capacity to waive Fifth and Sixth Amendment rights. In his order appointing psychiatrists the trial judge ordered that the experts examine the petitioner as to whether he had a "dimin-

ished capacity to achieve the state of mind requisite for the commission of the crime or crimes charged'' and whether he had ''the requisite mental capacity to knowingly and intelligently waive any rights he had . . . prior to making any statement to any investigating officer or other police officer.'' Had the trial judge believed that ''diminished capacity'' covered a lack of capacity to waive constitutional rights he would not have spelled out two separate ''areas'' of psychiatric examination.

An order requiring a defendant in a criminal case to disclose in advance of trial psychiatric evidence which he intends to introduce on the narrow issue of capacity to understand and to waive constitutional rights would extend the discovery rule enunciated in *Jones* beyond its present limitation to ''affirmative'' defenses as this term was employed in *Jones* and pose questions which we need not here decide.

### The Order Appointing Psychiatrists

The order of the court appointing psychiatrists upon the motion of the district attorney was made pursuant to Evidence Code section 730, which provides in pertinent part: ''When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which such expert evidence is or may be required. . . .''

The petitioner was not required to submit to the examination. He was merely required to make arrangements for an appointment and to call each doctor no later than November 4, 1968. The court, apparently anticipating a refusal by the petitioner to submit to an examination, ordered the psychiatrists to make a written report of any refusal to cooperate. The record before us discloses that the petitioner made appointments with each of the doctors in compliance with the court's order. He refused to submit to an examination. Each psychiatrist has filed a written report advising the court that the petitioner refused to submit to a psychiatric examination upon advice of counsel. Contrary to the petitioner's contention, the court's order does not require that he submit to a psychiatric examination.

A defendant in a criminal case has ''the right to refuse to speak at all to the court-appointed psychiatrist''

(*In re Spencer*, 63 Cal.2d 400, 410 [46 Cal.Rptr. 753, 406 P.2d 33]). ■ The order appointing the psychiatrists did not violate the right of the petitioner to assert his constitutional right not to incriminate himself. By refusing to submit, he can assert his constitutional right to remain silent. He has done so. He cannot be compelled to submit to a psychiatric examination, nor did the trial court order him to do so (see *People* v. *Strong,* 114 Cal.App. 522 [300 P. 84] ; see also *People* v. *French,* 12 Cal.2d 720, 766-769 [87 P.2d 1014] ; cf., *People* v. *Bickley,* 57 Cal.2d 788, 792 [22 Cal.Rptr. 340, 372 P.2d 100] ; *People* v. *Combes,* 56 Cal.2d 135, 149-150 [14 Cal. Rptr. 4, 363 P.2d 4] ; *People* v. *Guiterez,* 126 Cal.App. 526, 531 [14 P.2d 838]).

■ The appointment of psychiatrists pursuant to section 730 of the Evidence Code is discretionary with the court (see *People* v. *Berry,* 199 Cal.App.2d 97, 105 [18 Cal.Rptr. 388]). The court may appoint any expert whenever it shall appear that expert evidence is, or will be, required. ■ In this matter, the court was advised by petitioner's counsel that he intended to raise the issue of the petitioner's lack of capacity to understand his constitutional rights and to make a knowing and intelligent waiver. The court was thus made aware of the need for expert testimony. It should also be noted that the trial judge ordered that the reports of the psychiatric examination were to be submitted to the court and not made available to counsel until further order of the court.

We find no abuse of discretion concerning the order appointing psychiatrists on motion of the prosecution. The petition for a peremptory writ of prohibition is denied. The alternative writ is discharged.

Kaus, P. J., and Stephens, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied August 27, 1969.