[No. A022958. First Dist., Div. One. Apr. 17, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
PETER TALLO, Defendant and Appellant.

**COUNSEL**

Robert G. Wade, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Ronald E. Niver and J. Patrick Collins, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, J.**—Defendant Peter Tallo was charged in the superior court with (count 1) infliction of corporal punishment upon his wife (Pen.

Code, § 273.5), (count 2) aggravated assault (Pen. Code, § 245, subd. (a)), and (count 3) attempted murder (Pen. Code, §§ 664/187). His wife Liane was the alleged victim of the offenses. A jury found him guilty of each of the charges, that as to each he had inflicted great bodily injury (Pen. Code, § 12022.7), and that as to count 1 he had personally used a deadly weapon (Pen. Code, § 12022, subd. (b)).

He appeals from the judgment which was entered upon the jury's verdicts and findings.

■ The several appellate contentions may reasonably be condensed to Tallo's assertion that: "Defense counsel failed to act in a manner to be expected of a reasonably competent attorney acting as a diligent advocate."

■ *People* v. *Pope* (1979) 23 Cal.3d 412, 424-425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1], holds that: "Every person accused of a criminal offense is entitled to constitutionally adequate legal assistance. . . . That right is denied if trial counsel makes a critical tactical decision which would not be made by diligent, ordinarily prudent lawyers in criminal cases. . . . [A]ppellant must establish that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense. . . . [And] where the record shows that counsel has failed to research the law or investigate the facts in the manner of a diligent and conscientious advocate, the conviction should be reversed . . . ." (And see *People* v. *Mozingo* (1983) 34 Cal.3d 926, 928 [196 Cal.Rptr. 212, 671 P.2d 363]; *People* v. *Fosselman* (1983) 33 Cal.3d 572, 582-584 [189 Cal.Rptr. 855, 659 P.2d 1144]; *People* v. *Frierson* (1979) 25 Cal.3d 142, 160-161 [158 Cal.Rptr. 281, 599 P.2d 587].)

We state the relevant evidence and reasonable inferences therefrom, as established by the record before us.

Defendant Tallo and Liane Tallo were husband and wife. They were separated, and marriage dissolution proceedings had been, or were about to be, commenced. But the relations between the parties were reasonably amicable. On *May 29, 1982\**, the couple met at their erstwhile home to discuss the dissolution proceedings. They had dinner, and they drank champagne. Becoming drowsy, Liane went to a bedroom and retired, while Tallo remained at the dinner table watching television. Then, as reasonably condensed by the Attorney General, the following occurred (the italics is ours):

---

\*It will be noted that this date was antecedent to the adoption by the initiative process, *June 8, 1982*, of Penal Code section 25 abolishing the defense of diminished capacity.

"Sometime during the night Liane was awakened by a painful blow on the left side of her head. She screamed in great pain, feeling a large nail deep into the left side of her head, feeling appellant's [Tallo's] hand pulling the nail out, and hearing the nail going through her skull. . . . After appellant removed the nail from Liane's head, she saw that the nail was in the end of a piece of wood and that he had a *look of rage* on his face. He then repeatedly beat her in the face with the piece of wood, which measured about 12 inches by 8 inches by 3 inches. He hit her near her eyes, she tried to protect her face with her hand, and she felt her skin being ripped. Liane got off of the bed and tried to run out of the room. However, appellant held her by her left arm and repeatedly pulled her back, hurting her shoulder in the process. He kept picking her up after she fell down on the floor on her knees and continued to hit her around the face with the piece of wood. . . . Liane ran out of the house and screamed. . . . Appellant *calmed down* outside and then drove her to a hospital. They arrived at the emergency room about 5:20 a.m. on May 30, 1982.

"Liane's injuries consisted of a badly bruised shoulder, cuts and bruises on her knees and the front of her legs, two puncture wounds on her left temple, two cuts on her forehead, a cut on her lower right eyelid at the tear duct, and a cut to the side of her right eye. Consequently, proper movement of her arm was impeded and she had multiple stitches on her face and inside her eyelid. Her injuries did not appear to have been accidentally suffered and were consistent with her explanation of how they were inflicted."

At the hospital, according to its head nurse, Liane stated "that the injuries had been caused by Mr. Tallo, *that she was concerned about his mental health.*" (Our italics.)

Tallo was soon thereafter charged with the above-noted criminal offenses.

In the superior court the judge, having apparently become aware of the above-related evidence, ordered a *pretrial* report on the case from his probation officer.

On December 29, 1982, six days before the trial, the probation officer, among other things, reported that following his investigation of the case, "*I explained to Mr. Tallo that in view of the circumstances* in this situation, *a psychological or psychiatric evaluation would be helpful and perhaps, imperative* at some point in the future. *He stated he was willing to do this,* but that it would probably be too expensive." (Our italics.) *A copy of the report was timely received by Tallo's attorney.*

At no time during, or before, the trial did Tallo's attorney seek "a psychological or psychiatric evaluation" of his client. Nor did he seek the

appointment of an expert therefor at public expense, as permitted by Evidence Code section 730. (And see *People* v. *Vatelli* (1971) 15 Cal.App.3d 54, 60-61 [92 Cal.Rptr. 763]; *McGuire* v. *Superior Court* (1969) 274 Cal.App.2d 583, 597-598 [79 Cal.Rptr. 155].) Nor did he seek a continuance for such a purpose.

At the trial the defense offered by Tallo through his attorney was that Liane's injuries were caused by a wooden scaffolding about the house accidentally falling upon her, a defense which under the circumstances, in our opinion, was most implausible. None of the obvious "mental defenses," such as insanity, lack of malice or lack of intent, was offered or even discussed by the attorney.

Four witnesses were placed on the stand on Tallo's behalf.

Three of them were so-called character witnesses, who testified that in their opinions Tallo was a "peaceful person," and a "law-abiding citizen" or "very good citizen."

The fourth witness was Tallo's next door neighbor who had never before been interviewed, or even seen, by Tallo's attorney. He testified that he was awakened by a noise from next door; "it sounded like a piece of timber falling—piece of timber, you know, hitting another piece of wood. Just like when you hear a big heavy 2×4 come clumping down. That type—that was the sound I associated with. . . . [L]ater on . . . the police had come." And as to whether Tallo was a *"peaceful"* citizen, the neighbor witness spoke of a "problem with this gentleman," who "wasn't too good a neighbor." He "wouldn't necessarily describe Mr. Tallo as a nonviolent person." And, the witness testified, Tallo was "bugging my sister over certain things," once "he turned a hose on my sister." It must fairly be said that no evidentiary benefit to Tallo attended the witness' testimony; instead it was manifestly, and seriously, detrimental to him.

Other of Tallo's attorney's trial conduct will be illustrated by an incident when, with Tallo on the witness stand and answering a question, the attorney without explanation or excuse suddenly left the courtroom for the outer corridor, after which the jury were excused until he returned.

It is manifest that before the trial, Tallo's attorney was aware of Liane's statement, after the violent incident, that she "was concerned about [Tallo's] mental health," and of the probation officer's report that "a psychological or psychiatric evaluation would be helpful and perhaps imperative." He also had an opportunity to closely observe the facts and circumstances of the case, and his client's conduct and explanations.

The only apparent and reasonable reaction therefrom, we opine, was a so-called "mental defense." The failure to proffer such a defense *"resulted in the withdrawal of a potentially meritorious defense."*

And moreover, by failing to interview the person presented as Tallo's principal witness, his next door neighbor, the attorney had failed *"to investigate the facts in the manner of a diligent and conscientious advocate,"* with devastating results to his client.

Under *People* v. *Pope, supra,* 23 Cal.3d 412, and its lineal authority Tallo was, as here contended, *"not* represented in a manner to be expected of a reasonably competent attorney acting as a diligent advocate." The judgment should be, and will be, reversed.

The judgment is reversed.

Racanelli, P. J., concurred.

**NEWSOM, J.**—I respectfully dissent.

While I have no doubt that evidence of *Pope* error might be produced at a habeas corpus hearing, I find no convincing evidence of incompetency on the record before us. Evidence of maniacal behavior raises no inference that a criminal defendant is mentally ill; only that he is vicious, or capable of viciousness under certain circumstances. And as for the recommendation of the probation officer that a psychiatric evaluation might prove helpful, I think it does not lie with us, on the present record, to say that Tallo had no right to decline such a course of action, or that his counsel was under a professional duty to command it.

This case suggests to me an interesting aspect of the so-called *Pope* doctrine. If, as is the case here, a criminal defendant insists that he did not commit the act which comprises the charged crime, is his lawyer bound to investigate the defense of diminished capacity, which presupposes that he committed the act, if not the offense, in question? I think he is not.

A petition for a rehearing was denied May 13, 1985, and the dissenting opinion was modified to read as printed above. Newsom, J., was of the opinion that the petition should be granted.