[Civ. No. 35708. Second Dist., Div. Four. Mar. 31, 1970.]

GILBERT E. McMULLEN, JR., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

---

## COUNSEL

McGurrin & Denny and Geo. V. Denny III for Petitioner.

No appearance for Respondent.

Evelle J. Younger, District Attorney, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Real Party in Interest.

---

## OPINION

**ALARCON, J.**\* — The petitioner, Gilbert E. McMullen, Jr., has applied to this court for a "PETITION FOR WRIT OF PROHIBITION, MANDATE, OR OTHER APPROPRIATE REMEDY" to require the respondent superior court to refrain from taking any further steps or proceedings in the criminal

---

\*Assigned by the Chairman of the Judicial Council.

action against petitioner entitled People of the State of California v. Gilbert E. McMullen, Jr., superior court number A-110074 and to deny any discovery to the prosecution.

On January 19, 1970, this court issued an alternative writ of mandate as to the order entitled "Second Amended Order for Pre-Trial Discovery" and denied all other requested relief.

At the request of the prosecution, the respondent trial court issued the following discovery order on January 9, 1970: "To THE ABOVE-NAMED DEFENDANT'S ATTORNEY, GEORGE V. DENNY, III:

"You are ordered and directed by the said Court to make available to Plaintiff's attorney for examination, copying, or hearing any or all of the following things, facts of [sic] information in possession of either or any of you or any of your employees or agents:

"1. Names of all witnesses, other than the defendant, that will testify in support of the affirmative defense of either diminished capacity, insanity, or mental illness by medical standards.

"2. The proposed testimony of each of said witnesses.

"3. All reports, X-rays, electroencephalograms, diagnostic studies, and any other documentary evidence that said counsel intends to introduce into evidence in support of petitioner's affirmative defense.

"4. If there is an affirmative defense of either diminished capacity, insanity, or mental illness by medical standards, then in addition to the above:

"— Under *McGuire v. Superior Court,* 274 Cal.App.2d 583 [79 Cal. Rptr. 155], for the appointment of two Court-appointed psychiatrists to examine defendant and the resultant reports to be made available to both the prosecution and the defense."

█ Within certain narrow limitations the prosecution has the right to discover information from the defense in advance of trial. (*Jones* v. *Superior Court,* 58 Cal.2d 56, 61-62 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213]; *People* v. *Pike,* 71 Cal.2d 595, 605 [78 Cal.Rptr. 672, 455 P.2d 776]. A prosecution discovery order is subject to two restrictions: (1) the court cannot issue an order which violates the privilege against self-incrimination nor (2) require a disclosure which would violate the attorney-client privilege. (*Jones* v. *Superior Court, supra,* pp. 60-61.) In *Jones* the Supreme Court indicated that an order requiring the

defense to reveal the *names* of witnesses he intends to call and to make available *reports* he intends to introduce into evidence would not violate the Fifth Amendment or the attorney-client privilege.

In *Pike, supra,* the Supreme Court held that it was not prejudicial error to require defense counsel to supply names and addresses and "expected testimony of defense witnesses" since such information would necessarily be disclosed at the trial.[1]

 We have concluded that the discovery order in the matter before us goes beyond the limitations prescribed in *Jones* and *Pike* and violates

---

[1]We have examined the reporter's transcript on appeal in *People* v. *Pike,* 71 Cal.2d 595 [78 Cal.Rptr. 672, 455 P.2d 776], to learn the nature of the order made by the trial court and the information which was furnished to the prosecution. The order appears on page 106 of the reporter's transcript on appeal in the following language:

"THE COURT: And he made a motion yesterday that you give the names of your witnesses to them, which I denied, and I said that he should give the People time to investigate and make proper cross examination if they desired to. I am going to amplify that order by ordering you to give the names of the witnesses you are going to produce twenty-four hours before you put them on the stand.

"MR. ERSKINE: I understand the order. I understand the order and I will give it some serious—

"THE COURT: People versus Winhoven and Lopez, that order was upheld in that case."

On page 1363 of the reporter's transcript on appeal the following excerpt reveals the information actually made available to the prosecution:

"MR. ERSKINE: Now further, your Honor, there was an order made toward the beginning of the trial that I turn over to the District Attorney before the beginning of the defense the names of the proposed witnesses—we were in recess last Friday, and Thursday afternoon when we adjourned the matter slipped my mind, so I wish the record to reflect that I did on Friday sometime in the morning, roughly 11:00 o'clock in the morning, did turn over to Mr. Fukuto a list of proposed witnesses. I think I did make my objection clear at the time the order was made, but I want to make it further clear, your Honor, that we do object to turning those over on the grounds of the client-lawyer relationship; further, I did it under order and to risk the possibility of putting on long witnesses or to risk the possibility of disrupting the defense at this late date, it seemed to me better that I turn over and I therefore did."

We have also examined the appellant's opening brief in *Pike* to determine how the issue concerning the discovery order was framed by counsel. The entire contention on this point was set forth in the following language:

"IX

"THE TRIAL COURT COMMITTED REVERSIBLE PREJUDICIAL ERROR IN REQUIRING APPELLANT'S DEFENSE COUNSEL TO SUPPLY THE PROSECUTION WITH ANY INFORMATION CONCERNING NAMES, ADDRESSES, AND TESTIMONY EXPECTED FROM ANY DEFENSE WITNESSES, BECAUSE SAID INFORMATION VIOLATED APPELLANT'S ABSOLUTE RIGHT TO REMAIN SILENT AND REQUIRED APPELLANT TO BE A WITNESS AGAINST HIMSELF.

"At page 106, Vol. 1 of the Reporter's Transcript on Appeal the following occurs:

"THE COURT: And he made a motion yesterday that you give the names of your witnesses to them, which I denied and I said that he should give the people time to investigate and make proper cross examination if they desired to. I am going to

the privilege against self-incrimination (Cal. Const., art. I, § 13; Evid. Code, § 940), and the attorney-client privilege (Evid. Code, § 954).

The order requires that the defendant's attorney. (George V. Denny III) "make available to Plaintiff's attorney . . . any or all of the following things, facts of [*sic*] information in possession of *either or any of you* or any of your employees or agents . . . ." (Italics added.) It is not made clear from the context of the order what persons are referred to in the words "either or any of you." The defense consisted of only two persons at the time of the court's order—the defendant and his attorney.

If the court intended to include the defendant when it used the words "either or any of you," the order would violate the Fifth Amendment since it would require counsel to make available information "in possession of" the accused. ■ The Fifth Amendment prohibits a trial court from

---

amplify that order by ordering you to give the names of the witnesses you are going to produce twenty-four hours before you put them on the stand.

"MR. ERSKINE: I understand the order. I understand the order and I will give it some serious—

"THE COURT: People vs. Winhoven and Lopez, that order was upheld in that case.

"The Winhoven-Lopez case referred to by the Court may be found at: 60 C.2d 223, headnotes 6a, 6b and 7.

"The granting of and [*sic*] order by the court in appellant's case is a violation of his constitutional right to remain silent. Amend. 5 and 14, United States Constitution.

"Notwithstanding the California Supreme Court's opinion in the Winhoven case, that order by Judge Walker, as construed and applied in this case is unconstitutional. It is to be noted People vs. Lopez was decided August 5, 1963. Griffin vs. California 380 U.S. 609, 85 S.Ct. 1229, was decided April 29, 1965.

"Griffin settled a defendant's right to remain completely and absolutely silent. See also Malloy vs. Hogan, 378 U.S. 1, 84 S.Ct. 1489. The Court should reconsider this important constitutional question in light of Griffin. It may be said that the Court only asked the witnesses names 'twenty-four hours before' they were to take the stand in order to investigate for cross examination. But this is ordering the defendant to contribute information for their possible impeachment. The fact that they were or were not impeached is immaterial and irrelevant to the issue at hand. The order per se was and is incompetent and unconstitutional. The order is unconstitutional and must be struck down."

The Supreme Court in *Pike, supra,* at p. 605, disposed of the issue raised by the appellant concerning the validity of the discovery order in the following language:

"*Question: Eight. Was it prejudicial error to require defense counsel to supply names and addresses and expected testimony of defense witnesses?*

"*No.* This information would necessarily be disclosed at the trial and the witnesses would be subject to cross-examination. *Jones* v. *Superior Court,* 58 Cal.2d 56 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213], permits the People to obtain discovery in advance of trial. Discovery enables the prosecution to perform its trial function more effectively. Disclosing this information does not interfere with the defendant's right of privacy, freedom from self-incrimination, or the lawyer-client relationship. Absent the privileges afforded by law, the defendant has no valid interest in denying the prosecution access to evidence that can throw light on the issues."

directly or indirectly requiring a defendant in a criminal case to give a statement disclosing any facts or information to the prosecution. (*Jones* v. *Superior Court, supra,* 58 Cal.2d 56, 60.)

The discovery order in the instant matter appears to require the *defendant* to disclose facts and information to his attorney, in turn to be disclosed to plaintiff's counsel, in order that defense counsel may avoid punishment for contempt. If this was the court's intention, the discovery order must fall before the Fifth Amendment. Further, the order appears to compel counsel to disclose a privileged communication, i.e., "information" obtained from his client, or go to jail. We must resolve the doubtful language in favor of the petitioner.

In item number 1 the order requires counsel to furnish the names of witnesses "that will testify" in support of an affirmative defense. The order does not contain any standard by which counsel can determine that the witness will, in fact, be present and testify in support of an affirmative defense. The witness may disappear before trial, may testify in a manner inconsistent with his earlier statements, or suffer from a loss of memory as to the facts. In *Jones* v. *Superior Court, supra,* 58 Cal.2d 56, at page 61, the Supreme Court indicated that the prosecution "is entitled to discover the names of the witnesses petitioner *intends* to call . . . ." (Italics added.) A defense attorney has unique and certain knowledge as to the witnesses he intends to call as soon as he reaches the decision to use the witness' testimony. However, an attorney can never be certain how a witness will testify until after he has testified. To avoid vagueness, and to meet constitutional challenge, the discovery order in the instant case should have been limited to the identity of the persons the defense intends to call as witnesses. (*Jones* v. *Superior Court, supra,* 58 Cal.2d 56, 60-62; *Ruiz* v. *Superior Court,* 275 Cal.App.2d 633, 634-635 [80 Cal.Rptr. 523].)

Item number 1 of the order also refers to "the affirmative defense of . . . mental illness by medical standards." Mental illness by medical standards not amounting to diminished capacity, insanity, or lunacy is not in itself an affirmative defense to a criminal charge. This portion of the order is meaningless and unenforceable. It is possible (although grammatically improper) that the trial court meant the words "by medical standards" to modify the word "testify" (i.e., "witnesses . . . who will testify by medical standards"), thus approximating the proposal made by the Special Commissions on Insanity and Criminal Offenders in their Second Report (dated November 15, 1962), at page 15 et seq. If this was the intent the meaning should be spelled out with greater clarity and,

in the light of the long-time debate over the semantics involved, it would be preferable to express the order in the terms used by the commissions— i.e., "expert" testimony.

Item number 2 requires counsel to make available the proposed testimony of each of said witnesses. This portion of the order is also vague. In *Jones* the Supreme Court indicated that "reports" which the defendant intended to introduce into evidence were discoverable. From the context of the *Jones* opinion it is clear that the Supreme Court was referring to doctors' reports *prepared by the witness-physicians* concerning their treatment of the petitioner. In *Pike,* as in *Jones,* the Supreme Court limited the type of information which is discoverable to evidence which "would necessarily be disclosed at the time of trial." (*People* v. *Pike, supra,* 71 Cal.2d 595, 605; see *Ruiz* v. *Superior Court, supra,* 275 Cal.App.2d 633, 634-635.) The order in the instant matter does not specify whether the "proposed testimony" refers to existing written statements or recordings of statements of witnesses which the defense intends to introduce as evidence, or if counsel is required to obtain written or recorded statements for the benefit of the prosecution which he does not intend to introduce at the trial.

In contrast to the language used in items 1 and 4, item 3 refers simply to "affirmative defense." While that term (nowhere very specifically defined —see *McGuire* v. *Superior Court* (1969) 274 Cal.App.2d 583, 594-595 [79 Cal.Rptr. 155]) is permissible in appellate court opinions discussing discovery rights in general, it is not sufficiently specific for use in an order directed to counsel. It is not too much to insist that the prosecution single out the particular "affirmative defense" that it fears may be raised, and to limit the order to the defense so pointed out. Counsel should not be required to speculate at his peril as to his responsibilities.

Item number 4 concerning the appointment of psychiatrists defies our comprehension. It is unclear if the court is ordering the attorney for the petitioner to disclose the reports of court-appointed psychiatrists already in existence or is, instead, granting the request of the People for the appointment of psychiatrists at some time in the future should the petitioner determine that he will offer an affirmative defense involving his mental state. The reporter's transcript of the proceedings of January 9, 1970, has been reviewed. We are unable to find in it any order of the court appointing psychiatrists to examine the petitioner. We must therefore assume that the trial court intends to issue additional orders imple-

menting and clarifying item number 4 should the attorney for the petitioner decide to present an affirmative defense. As presently worded, item number 4 does not require the attorney for the petitioner to do anything.

The trial court has failed to make clear the duty it has imposed upon counsel. ■ Discovery orders which require defense counsel to furnish information to the prosecution place defense counsel in jeopardy of indefinite imprisonment for contempt for a violation of the court's order. Due process requires that the court spell out with precision what is required of counsel.

The alternative writ is discharged. Let a peremptory writ of mandate issue requiring the trial court to vacate the order entitled "Second Amended Order for Pretrial Discovery."

Kingsley, Acting P. J., and Dunn, J., concurred.