[Crim. No. 883. Fifth Dist. July 22, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD PAUL GRIFFIN, Defendant and Appellant.

## COUNSEL

Michael Korn, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Charles P. Just, James T. McNally and Edsel W. Haws, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN (G. A.), J.**—Donald Paul Griffin appeals from a judgment entered upon a guilty verdict of first degree murder (Pen. Code, § 187). He was sentenced to life imprisonment by the court (Pen. Code, § 190.1) after the jury failed to agree on the imposition of punishment.

As grounds for reversal, among others, appellant asserts that the trial court should have given, *sua sponte*, a nonstatutory manslaughter instruction called for by *People* v. *Conley,* 64 Cal.2d 310 [49 Cal.Rptr. 815, 411 P.2d 911], at page 318, where the court said: "Accordingly, a finding of provocation sufficient to reduce murder to manslaughter is not the sole means by which malice can be negated and voluntary manslaughter

established. A person who intentionally kills may be incapable of harboring malice aforethought because of a mental disease, defect, or intoxication, and in such case his killing, unless justified or excused, is voluntary manslaughter." (See also *People* v. *Castillo,* 70 Cal.2d 264 [74 Cal.Rptr. 385, 449 P.2d 449]; *People* v. *Mosher,* 1 Cal.3d 379 [82 Cal.Rptr. 379, 461 P.2d 659]; *People* v. *Tidwell,* 3 Cal.3d 82 [89 Cal.Rptr. 58, 473 P.2d 762].)

■ Failure to give such an instruction, *sua sponte,* is prejudicial per se where the defense of diminished capacity is fairly raised by the evidence (*People* v. *Cobas,* 12 Cal.App.3d 952, 956 [91 Cal.Rptr. 110]; *People* v. *Aubrey,* 253 Cal.App.2d 912, 920 [61 Cal.Rptr. 772]; *People* v. *Castillo, supra,* 70 Cal.2d 264), and the trial court can be said to be alerted by the evidence presented, or by other means, that diminished capacity is an issue in the case. (*People* v. *Cram,* 12 Cal.App.3d 37, 42 [90 Cal.Rptr. 393].)

■ He also claims that the trial court inadequately instructed the jury as to the specific intent required for felony murder in the context of appellant's diminished capacity defense. (*People* v. *Mosher, supra,* 1 Cal. 3d ·379.) The theory of the prosecution was that the decedent was killed as an incident to being robbed. The jury was instructed on the felony-murder doctrine based on robbery, but it was not instructed on diminished capacity as that defense relates to the specific intent required for robbery.
■ The Supreme Court tells us in *People* v. *Mosher, supra,* 1 Cal.3d 379, at 392-393: "As we recently observed in a case concerning a killing in the perpetration or attempt to perpetrate robbery: 'In cases in which the prosecution advances a felony-murder theory, defendant is entitled, upon a sufficient factual showing, to instructions negating a conviction on a felony-murder theory if, at the time of the alleged offense, defendant could not form the specific intent—here, the intent "to permanently deprive the owner of his property"—that serves as a necessary element of the felony charged.' [Citations.]

"In the present case the prosecution advanced the felony-murder theory as to robbery, rape, and burglary. Defendant adduced a proper factual showing of diminished capacity which might negate his intent 'to permanently deprive the owner of his property' [citation], to enter the house of another with the intent to commit a felony [citations], or to commit an act of sexual intercourse with force upon a woman not his wife [citations].

"By failing to instruct the jury that defendant's diminished capacity might rebut each of the specific intents necessary to a finding of a killing in the perpetration or attempt to perpetrate rape, burglary, or robbery, and hence rebut the prosecution's felony-murder theory of first degree murder,

the trial court deprived defendant of his constitutional right 'to have the jury determine every material issue presented by the evidence.' [Citations.]" (See also *People* v. *Tidwell, supra,* 3 Cal.3d 82.)

While the trial court did instruct on diminished capacity as it pertains to murder,[1] it did not give the nonstatutory manslaughter instruction or a diminished capacity instruction as it related to the alleged underlying robbery involved in the felony-murder doctrine.

■ Our inquiry, therefore, must be directed toward determining whether there was sufficient evidence deserving of consideration as to have alerted the trial judge that diminished capacity was a defense, and to have required the giving of these instructions, *sua sponte.* (*People* v. *Modesto,* 59 Cal.2d 722, 727 and 729 [31 Cal.Rptr. 225, 382 P.2d 33]; *People* v. *Graham,* 71 Cal.2d 303, 316 [78 Cal.Rptr. 217, 455 P.2d 153]; *People* v. *Cram, supra,* 12 Cal.App.3d 37.)

The appellant did not testify. He presented no independent evidence of intoxication, and there was no expert testimony on the subject. There was substantial testimony that he was not suffering from the effects of alcohol. The affirmative evidence on this issue was all by way of testimony of witnesses to whom appellant had made extrajudicial statements, and because of the importance of the determination to be made, we set forth in the margin that testimony.[2] If the record affirmatively indicated that ap-

---

[1]The following two instructions pertaining to mental capacity to commit murder were given by the trial court: "Before you may find the defendant guilty of wilful, deliberate and premeditated murder of the first degree, you must determine that at the time the crime allegedly was committed he not only had sufficient mental capacity to form the specific intent to kill but also had sufficient mental capacity to maturely and meaningfully deliberate, premeditate and reflect upon the gravity of his contemplated act and to harbor malice aforethought."

"If you find from the evidence that at the time the alleged crime was committed, the defendant had substantially reduced mental capacity, whether caused by intoxication or any other cause, you must consider what effect, if any, this diminished capacity had on the defendant's ability to form any of the specific mental states that are essential elements of murder. Thus, if you find that the defendant's mental capacity was so diminished that he did not, or you have a reasonable doubt whether he did, premeditate, deliberate, or form an intent to kill, you cannot convict him of wilful, deliberate and premeditated murder of the first degree. Also, if you find that his mental capacity was so diminished that he did not, or you have a reasonable doubt whether he did, harbor malice aforethought, as it has been defined for you, you cannot find him guilty of murder of either the first or second degree."

[2]Upon direct examination of Officer William Manley, he testified as to a conversation with Mr. Griffin as follows: "He said that after they left Mr. Zamlich's apartment they drove to the Sunnyvale Bowl where Mr. Zamlich was to teach Mr. Griffin the art of playing pool. And Mr. Griffin then told us that because he had been drinking quite a bit and he didn't feel he was really sober that he didn't do too well playing, playing the pool games."

Upon direct examination of Detective Robert Malone, he testified, with respect to a conversation with the appellant, as follows: "THE WITNESS: Sergeant Manley asked

pellant was not relying on the defense of diminished capacity by reason of intoxication (*People* v. *Fain,* 70 Cal.2d 588 [75 Cal.Rptr. 633, 451 P.2d 65]; *People* v. *Nichols,* 3 Cal.3d 150 [89 Cal.Rptr. 721, 474 P.2d 673]) or that the instructions were intentionally omitted as part of the defense trial strategy, or that the trial judge was not alerted to the fact that this was a defense in the case (*People* v. *Cram, supra,* 12 Cal.App.3d

---

the Defendant if he would like a glass of water, and the Defendant replied that he would, and then Sergeant Manley left the room, and my next question as—to the Defendant was, 'Was he sober enough to realize where he was when he had decided to turn around and come back to San Jose on a drive he had told me that he had made over in the Newman area?' And he said, 'Yes, I know where the service station is.' I asked him if he was sure, and he said, 'I think.' And I asked him, 'Which one did he think it was,' and he said 'Why, you must know or you wouldn't be on me about the $50.00 bill,' and he said, 'There we are playing games again, because I don't know why you are asking that, because I do and I don't, you know, because— the fact is that what difference does it make whether I knew where I was then. I was drunk or drinking, but I was not too drunk to know where I was.' I informed him that I was curious because I wondered whether he would have been able to do that amount of driving if he was drunk, and I couldn't see him making a trip like that if he was extremely intoxicated. He said, 'I never did say I was drunk.' "

Upon cross-examination of Mr. Herb Lazier of the Department of Justice, Bureau of Criminal Identification, he testified as follows: "Q. Now, you indicated Mr. Griffin said that he and Zamlich left the bowling alley after having some drinks. Is that right?

"A. Yes, sir.

"Q. Did he indicate that Zamlich had been drinking with him? A. He said they were both drinking.

"Q. Did he say how much they had been drinking?

"A. He said not enough to become—and then he was describing himself, at least— not enough to become drunk but feeling the effects of alcohol.

"Q. Did you ask him how many drinks they had had?

"A. I believe I did, but I didn't get a specific answer.

"Q. All right. Did he know how many drinks he had had?

"A. If he did he didn't say he did.

"Q. Did he describe any impairment to you?

"A. Impairment by way of alcohol?

"Q. That's right.

"A. I asked him if he was drunk and he told me that he was not too drunk to drive a car nor was he intoxicated sufficiently to be construed as drunk."

Upon cross-examination of Mr. Joseph W. Mersereau, the manager of Sunnyvale Bowl, he testified with respect to a conversation with the appellant on the evening following the night of the killing, when Mr. Griffin came back to the Sunnyvale Bowl and engaged Mr. Mersereau in conversation, as follows:

"Q. What transpired between you, sir?

"A. He came up to the desk and asked if I recognized him.

"Q. And what did you say?

"A. At that time I said no.

"Q. But you did recognize him?

"A. Yes, I did.

"Q. What else was said at this time?

"A. He asked if I remembered him being in there, and I said no, but I had remembered.

"Q. All right.

"A. And then he stated that he had too much to drink the night before and couldn't remember when he left, and he would like to know if I knew."

37), then the evidence set forth could very well be characterized as being so thin, fragmentary and minimal as to not have required the omitted instructions to have been given upon the court's own initiative. (*People* v. *Moles,* 10 Cal.App.3d 611, 617-618 [89 Cal.Rptr. 226]; *People* v. *Harris,* 7 Cal.App.3d 922, 925-926 [87 Cal.Rptr. 46].) ˙

However, we are directly and forcefully confronted with the indisputable fact that defense counsel requested, and the court gave, the instruction on diminished capacity as it applied to murder (see fn. 1). It would seem totally illogical to conclude other than that the giving of this instruction demonstrated beyond doubt that the defendant was relying upon the defense of diminished capacity, that the trial judge was alerted to that defense, and that the trial court was of the opinion that there was sufficient evidence of intoxication worthy of consideration by the jury to require all appropriate instructions on diminished capacity to have been given. In *People* v. *Castillo, supra,* 70 Cal.2d 264, at page 270, the court stated:

"Indeed, the trial court instructed the jury on the significance of the diminished capacity defense in other respects. The court must have concluded that sufficient evidence had been adduced to compel an instruction on diminished capacity because it gave such an instruction, although it was an inadequate one. Accordingly, in failing to instruct on nonstatutory voluntary manslaughter the court erred."

It is elementary that we are compelled to follow the rubric of the Supreme Court set forth in the aforementioned cases dealing with the defense of diminished capacity. As Justice Traynor said in *Weil* v. *Weil,* 37 Cal.2d 770, 776 [236 P.2d 159]: "A judge is not required to approve every statute or precedent by which his decision is governed. Like other citizens he is bound, not to believe in a particular law, but to obey it." Following these strictures, we have no alternative but to reverse the conviction, because the trial court inadequately instructed the jury as to voluntary man-. slaughter and felony murder in the context of defendant's diminished capacity defense.

While this disposes of the case, we comment briefly on some of the other points raised by the appellant for the guidance of the trial court upon retrial.

■ The court entered a pretrial discovery order upon the prosecution's motion ordering the appellant to disclose to the prosecution the names and addresses of the witnesses the defendant intended to call to testify in support of his affirmative defenses, and any statement written or oral in the possession of the defendant or his attorney given by said witnesses. Under the holdings in *Prudhomme* v. *Superior Court,* 2 Cal.3d 320 [85

Cal.Rptr. 129, 466 P.2d 673], and *Bradshaw* v. *Superior Court,* 2 Cal.3d 332 [85 Cal.Rptr. 136, 466 P.2d 680], this order was void. The record, however, does not reflect whether the order was or was not actually complied with or what information, if any, was supplied pursuant to it. The void order considered in a vacuum would in and of itself have no effect. If it were not complied with, the appellant has no room to complain, and he has not pointed out in the record any reference demonstrating compliance.

If the order was complied with, he has waived any objection thereto, as he could have sought a peremptory writ. (*Bradshaw* v. *Superior Court, supra,* 2 Cal.3d 332, 333, fn. 2; see *People* v. *White,* 18 Cal.App.3d 44, 50-51 [95 Cal.Rptr. 576].) At any rate, since no peremptory writ was sought, appellant on this appeal is required to show that compliance therewith was prejudicial. (*People* v. *Shipp,* 59 Cal.2d 845 [31 Cal.Rptr. 457, 382 P.2d 577]; *People* v. *Archuleta,* 16 Cal.App.3d 295, 299-300 [93 Cal.Rptr. 881].) This appellant has failed to do.

■ We have carefully reviewed appellant's contention that he did not waive his *Miranda* rights before talking with Officer Manley on the night of the killing, and we find no merit in his contention. He does not question that a proper *Miranda* warning was given or that he understood his rights. He relies on the fact that he did not expressly waive those rights. A waiver does not require a written or oral statement to substantiate it. (*People* v. *Johnson,* 70 Cal.2d 541 [75 Cal.Rptr. 401, 450 P.2d 865].) He consciously chose to continue to speak and to answer questions after being advised of those rights and indicating that he understood them, and he did not request that his questioning cease or to talk to a lawyer at any stage of the interrogation. Before the statements to the officer were admitted, the judge properly held a lengthy hearing in chambers. At that hearing he determined that appellant understood and had waived his *Miranda* rights. The record clearly supports the learned judge's conclusion.

Appellant's position that the court erred in giving on its own motion an instruction covering appellant's constitutional rights to not testify is entirely devoid of merit. (See *People* v. *Cooper,* 10 Cal.App.3d 96, 105 [88 Cal.Rptr. 919]; *People* v. *Brady,* 275 Cal.App.2d 984, 992 [80 Cal. Rptr. 418].)

The judgment is reversed.

Stone, P. J., and Gargano, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 30, 1971.