[Civ. No. 37300. First Dist., Div. One. Jan. 16, 1976.]

MARIO J. CRAIG, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

[Civ. No. 37380. First Dist., Div. One. Jan. 16, 1976.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
MARIO J. CRAIG, Real Party in Interest.

**COUNSEL**

Gary M. Sirbu for Petitioner in No. 37300 and for Real Party in Interest in No. 37380.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and William M. Baldwin, Deputy Attorneys General, for Real Party in Interest in No. 37300 and for Petitioner in No. 37380.

No appearance for Respondent.

**OPINION**

**MOLINARI, P. J.**—These proceedings have been consolidated. They involve the same discovery order made in a criminal action. We issued an alternative writ of mandate in each proceeding for the purpose of determining. the specific attacks by the respective petitioners upon certain portions of the trial court's order for discovery.

Petitioner Mario J. Craig, who is charged with a violation of Penal Code section 187 (murder), filed a motion for pretrial discovery requesting discovery of oral and written statements made by any witness to any inspector or attorney of the Alameda County District Attorney's office.

The trial court granted the request for the statements of witnesses "conditioned upon the simultaneous disclosure to the People of any similar oral or written statements made by said witnesses to representatives of the Defendant."[1]

Petitioner Mario J. Craig contends that the conditional order of discovery with respect to witnesses' statements made to his representatives was improper as violative of his privilege against self-incrimination and of the attorney-client privilege. The People, as petitioners, contend that the grant of Craig's request for witnesses' statements to inspectors and attorneys of the district attorney's office was improper since full discovery had already been offered to Craig and because the information sought was work product.

■ It should be pointed out, initially, that it is not proper for a court to make discovery by a defendant in a criminal case conditioned upon the defendant's affording similar discovery to the prosecution. A defendant's right to discovery is governed by principles different from those applicable to discovery by the prosecution and each must be tested by the applicable principles. The one is not dependent on the other.

■ "Absent some governmental requirement that information be kept confidential for the purposes of effective law enforcement, the state has no interest in denying the accused access to all evidence that can throw light on issues in the case, . . ." (*People v. Riser,* 47 Cal.2d 566, 586 [305 P.2d 1] [overruled on other grounds, *People v. Morse,* 60 Cal.2d 631, 637, 648-649 (36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810)]; *Jones v. Superior Court,* 58 Cal.2d 56, 59 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213].) The right of an accused to discover evidence "is based on the fundamental proposition that he is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information. [Citations.]" (*Pitchess v. Superior Court,* 11 Cal.3d 531,

---

[1]Petitioner also sought discovery of specific juvenile court proceedings. The request for such discovery was denied. In the instant petition petitioner also sought an order for such discovery. However, following the submission of the cause before us petitioner has withdrawn that portion of the petition which requests that mandate issue for the discovery of the specified juvenile court proceedings.

535-536 [113 Cal.Rptr. 897, 522 P.2d 305].) These principles are predicated upon the true purpose of a criminal action which is the ascertainment of the truth. (*Evans* v. *Superior Court,* 11 Cal.3d 617, 622 [114 Cal.Rptr. 121, 522 P.2d 681]; *In re Ferguson,* 5 Cal.3d 525, 531-532 [96 Cal.Rptr. 594, 487 P.2d 1234]; *People* v. *Riser, supra.*) Accordingly, in implementation of this policy the prosecution must disclose items of substantial and material evidence known to it, which evidence is favorable to the defense, even in the absence of a request for disclosure. (*Evans* v. *Superior Court, supra; In re Ferguson, supra.*)

■ A defendant's motion to discover is not dependent on civil discovery procedure but "is addressed solely to the sound discretion of the trial court, which has inherent power to order discovery when the interests of justice so demand. [Citations.]" (*Pitchess* v. *Superior Court, supra,* 11 Cal.3d 531, 535.) Therefore, discovery may be compelled by an accused by demonstrating that the requested information will facilitate the ascertainment of the facts and a fair trial. (*Pitchess* v. *Superior Court, supra,* at p. 536; *Cash* v. *Superior Court,* 53 Cal.2d 72, 75 [346 P.2d 407].) "The requisite showing may be satisfied by general allegations which establish some cause for discovery other than 'a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime.' [Citations.]" (*Pitchess* v. *Superior Court, supra,* at p. 537.)

■ The prosecution is also entitled to discover but its right is more restrictive than that of the accused. "A prosecution discovery order is subject to two restrictions: (1) the court cannot issue an order which violates the privilege against self-incrimination nor (2) require a disclosure which would violate the attorney-client privilege. [Citation.]" (*McMullen* v. *Superior Court,* 6 Cal.App.3d 224, 226 [85 Cal.Rptr. 729]; see *Prudhomme* v. *Superior Court,* 2 Cal.3d 320, 322-323, 327 [85 Cal.Rptr. 129, 466 P.2d 673]; *People* v. *Pike,* 71 Cal.2d 595, 605 [78 Cal.Rptr. 672, 455 P.2d 776]; *Jones* v. *Superior Court, supra,* 58 Cal.2d 56, 59, 61-62.)

In *Prudhomme,* it was held that demand for discovery on the part of the prosecution which can result in a disclosure that conceivably might lighten the burden of proving its case in chief violates the accused's Fifth Amendment right against self-incrimination. (2 Cal.3d at pp. 324-327.) In that case the Supreme Court granted prohibition against the enforcement of a pretrial discovery order which would have compelled a criminal defendant's attorney to disclose to the prosecution the names, addresses

and expected testimony of the witnesses the defendant intended to call at the trial. This order was held to be too broad because it could require the defendant to disclose information which might serve as a link in a chain of evidence tending to establish her guilt of a criminal offense. (At p. 327.)

■ Since the privilege against self-incrimination forbids compelled disclosures which could serve as a link in a chain of evidence tending to establish guilt of a criminal offense, it is incumbent upon a trial court, in ruling on a claim of privilege, to find that it clearly appears from a consideration of all the circumstances that the matters to be disclosed cannot possibly have a tendency to incriminate the defendant. (*Prudhomme* v. *Superior Court, supra,* 2 Cal.3d 320, 326; *People* v. *Bais,* 31 Cal.App.3d 663, 670-671 [107 Cal.Rptr. 519].) Accordingly, the trial court must inquire into the incriminatory nature of the information sought and to this end must examine the demanded materials before acting upon the prosecution's motion for discovery. (*Prudhomme* v. *Superior Court, supra,* at pp. 326-327; *People* v. *Bais, supra,* at p. 671.)

In the instant case, Craig's contention, if sustainable, must rest upon the ground of self-incrimination under the principles articulated in *Prudhomme.* We do not perceive statements of witnesses to be encompassed by the attorney-client privilege.

Applying the *Prudhomme* test to the discovery order in the instant case I observe that it does not clearly appear from the order for discovery or the records below that the disclosure to the prosecution of the statements made by witnesses to representatives of the defendant cannot possibly tend to incriminate him. The order does not indicate that respondent court decided or considered whether the circumstances of the case indicate that the information sought from Craig in return for the order granting his motion for discovery would not be incriminatory. Accordingly, that portion of the order which conditioned Craig's discovery upon his granting discovery to the prosecution similar to that requested by him was beyond the court's jurisdiction and, therefore, void and unenforceable because it was violative of Craig's constitutional rights. (See *Reynolds* v. *Superior Court,* 12 Cal.3d 834, 839 [117 Cal.Rptr. 437, 528 P.2d 45]; *People* v. *Bais, supra,* 31 Cal.App.3d 663, 669-673; *People* v. *Griffin,* 18 Cal.App.3d 864, 870-871 [96 Cal.Rptr. 218]; *Rodriguez* v. *Superior Court,* 9 Cal.App.3d 493, 495-496 [88 Cal.Rptr. 154].)

Advertence is next made to the propriety of the order granting Craig discovery of the statements of witnesses in the possession of the prosecution absent the condition upon which it is granted. No contention is made by the People that Craig has not made the requisite showing that the requested information will facilitate the ascertainment of facts and a fair trial. Rather it is the People's position that they have already afforded full discovery to Craig and that such discovery should suffice.[2] ■ This contention ignores the holdings of the decisions that articulate the rule that a defendant's right to discoverable matter is viable both prior to and during trial. (*Funk* v. *Superior Court,* 52 Cal.2d 423, 424 [340 P.2d 593]; *Powell* v. *Superior Court,* 48 Cal.2d 704, 707-708 [312 P.2d 698]; *People* v. *McManis,* 26 Cal.App.3d 608, 617-618 [102 Cal.Rptr. 889].)

It is not contended by the People that they have already furnished to Craig the oral and written statements made by any witness to any inspector or attorney of the district attorney's office, nor is it contended that Craig is not entitled to discover such statements. ■ An accused has the right to discover statements by prospective witnesses to agents of the state. (*Funk* v. *Superior Court, supra,* 52 Cal.2d 423, 424; *People* v. *Riser, supra,* 47 Cal.2d 566, 587 [overruled on other grounds in *People* v. *Morse,* 60 Cal.2d 631, 637, 648-649 (36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810)]; *People* v. *McManis, supra,* 26 Cal.App.3d 608, 617; see *Evans* v. *Superior Court, supra,* 11 Cal.3d 617, 622, fn. 4.)

■ The People also urge that the information sought from the prosecution should be protected because it is the result of its work product. The People concede that there is presently no standard protecting the prosecutor's work product from criminal discovery and that the applicability of civil standards is questionable.

In considering this contention it must be noted that it is well established that civil discovery procedure has no relevance to criminal prosecutions. (*Pitchess* v. *Superior Court, supra,* 11 Cal.3d 531, 536; *Powell* v. *Superior Court, supra,* 48 Cal.2d 704, 707-708.) Moreover, there is nothing in the record to indicate that the statements constituted work product of the People's attorneys within the statutory meaning of that

---

[2]The essence of the People's contention appears simply to be that the statements already furnished to Craig should suffice the purposes of discovery and that, at this point in the proceedings, revelation of further statements of witnesses would discourage further conscientious criminal prosecution.

term in civil discovery procedure.[3] In any event, assuming the statements sought to be discovered by Craig to be work product, there is no statutory or case authority that shields it from discovery.

The alternative writ is discharged and the peremptory writ of mandate is denied in proceeding 1 Civil 37380. The alternative writ is discharged and a peremptory writ of mandate shall issue in proceeding 1 Civil 37300 requiring the trial court to vacate and strike from its order that part granting discovery to petitioner Craig which provides as follows: "The obligation to disclose the material described in Paragraph 1(b)(ii) and (iii) is conditioned upon simultaneous disclosure to the People of any similar oral or written statements made by said witnesses to representatives of the Defendant."

**ELKINGTON, J.**—I concur.

I am in complete agreement with Presiding Justice Molinari's conclusions in respect of the superior court's order permitting defense discovery of certain juvenile court findings concerning earlier misdeeds of prospective witnesses at the trial.

But otherwise my concurrence rests wholly on the rule of *Prudhomme* v. *Superior Court,* 2 Cal.3d 320 [85 Cal.Rptr. 129, 466 P.2d 673], by which this court is bound. *Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], mandates that: "The decisions of [the Supreme Court] are binding upon and must be followed by all the state courts of California." Nevertheless, I am of the opinion that *Prudhomme* states erroneous Fifth Amendment law and fails to follow the United States Supreme Court and its own previous decisions.

Because of my deep respect for the court which authored *Prudhomme,* it would be preferable for me to simply concur in toto with the principal opinion, without elaboration. But it seems to be the clear policy of this state that its intermediate reviewing courts record their disagreement with existing law, at least in areas of public importance such as this. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 665, p. 4579.) This policy has received its most recent expression by rule 976, California

---

[3]Code of Civil Procedure section 2016, subdivision (b), in pertinent part, provides: "The work product of an attorney shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice, and any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances.".

Rules of Court. That rule provides for publication of our opinions which "criticize existing law," even though they do not otherwise meet the rule's criteria for publication. Mr. Witkin *(op. cit.)* earthily expresses the same principle by stating that reviewing courts "are bound, but not gagged" by precedents laid down by a higher court.

In *Prudhomme* the defendant was ordered to disclose to the People the "names, addresses and expected testimony of the witnesses [he] intends to call at trial." The order was held to be violative of the defendant's Fifth Amendment right against self-incrimination. In the case before us the order was less broad; the trial court granted a defense request for statements of the People's witnesses, "conditioned upon simultaneous disclosure to the People of any similar oral or written statements made by said witnesses to representatives of the defendant."

*Prudhomme* held (p. 326) that the principal Fifth Amendment criterion, upon request for discovery against an accused, is whether the disclosure sought *"conceivably might lighten the prosecution's burden of proving its case in chief."* (Italics added.) Finding that the People's burden would be so lightened under the order there at issue, the high court prohibited its enforcement.

In the case here at bench, giving effect to the discovery order's condition, beyond question, "conceivably might lighten the prosecution's burden of proving its case in chief." It was for that reason invalid under *Prudhomme's* holding, and its enforcement must be restrained.

It is observed that *Prudhomme,* although stating that in some situations discovery is available to the People, nevertheless appears to foreclose it in *all cases;* for it is the essential nature of the People's discovery that it will "lighten the prosecution's burden of proving its case in chief."

More recently the high court in *Pitchess* v. *Superior Court,* 11 Cal.3d 531, 535 [113 Cal.Rptr. 897, 522 P.2d 305], expressed the principle that a criminally accused's broad right of discovery "is based on the fundamental proposition that he is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information." (To the same effect see *Hill* v. *Superior Court,* 10 Cal.3d 812, 816 [112 Cal.Rptr. 257, 518 P.2d 1353]; *Cash* v. *Superior Court,* 53 Cal.2d 72, 75 [346 P.2d 407]; *Powell* v. *Superior Court,* 48 Cal.2d 704, 707, 709 [312 P.2d 698].)

It follows from *Pitchess* and its predecessor authority that a defendant who, after request therefor, is denied access to "relevant and reasonably accessible information" by the People is denied a fair trial, and thus due process of law. (See *People* v. *Lyons,* 47 Cal.2d 311, 319 [303 P.2d 329].)

There is a necessary and implicit corollary. If the People are denied access to "relevant and reasonably accessible information," then, by the very standards of *Prudhomme,* they are denied a fair trial and due process of law. Not only this, but the search for truth, the only purpose of a criminal trial, is frustrated.

It is said: " 'The search for truth is not served but hindered by the concealment of relevant and material evidence. Although our system of administering criminal justice is adversary in nature, a trial is not a game. Its ultimate goal is the ascertainment of truth, and where furtherance of the adversary system comes in conflict with the ultimate goal, the adversary system must give way to reasonable restraints designed to further that goal.' " (*Evans* v. *Superior Court,* 11 Cal.3d 617, 622 [114 Cal.Rptr. 121, 522 P.2d 681]; *In re Ferguson,* 5 Cal.3d 525, 531 [96 Cal.Rptr. 594, 487 P.2d 1234].)

If this one-sided result, permitting the accused, but not the People, to suppress relevant and accessible evidence, and thus the truth, necessarily follows from a true interpretation of the Fifth Amendment, so be it. For the Constitution and its amendments are the supreme law of the land, to which lesser and conflicting rights and principles must yield. But reason, fairness and most of all, justice, impel a close inquiry into the constitutional propriety of *Prudhomme*'s rule.

It seems proper, initially, to consider the constitutional relationship of the competing rights with which we are concerned.

The editors of Corpus Juris Secundum, from broad authority, have tersely explained the origin of our Bill of Rights, in this manner: "The bills of rights inserted in the American constitutions contain a declaration of general principles as a basis of government, copied from Magna Charta and the English Bill of Rights of 1689. These bills are regarded as parts of the constitutions in which they are recited, and are to be construed with other constitutional provisions. In view of their origin and long use, they cannot be regarded as introducing new matters or prescribing new conditions; their purpose is to preserve ancient principles rather than to establish modern principles." (Fn. omitted; 16 C.J.S., Constitutional Law, § 27, p. 100; and see authority there collected.)

Two of these general principles of the common law, relevant here, are stated by Dr. Broom as follows:

"Salus Populi suprema Lex. (XII. Tables:—Bacon, Max., reg. 12.)—*Regard for the public welfare is the highest law.*" (Broom's Legal Maxims (8th ed. 1911) p. 1.)

"Nemo tenetur seipsum accusare. (Wing. Max. 486.)—*No man can be compelled to criminate himself.*" (Broom's Legal Maxims, *op. cit.,* p. 761.) .

We first consider the principle "Salus Populi suprema Lex." Dr. Broom appropriately places this ancient precept first among the common law rules expounded in his work. It is properly translated as "The *safety* of the people is the supreme law." (See *Middle Rio Grande W.U. Ass'n* v. *Middle Rio Grande C.D.,* 57 N.M. 287 [258 P.2d 391, 405]; italics added.)

This time-honored truism of our law expresses the basis upon which all civilized, and even primitive, governments are necessarily founded. "The most commonly acknowledged end or purpose of government has been either justice or the public good." (Encyclopaedia Brittanica (1954) Government, p. 561.)

The principle was adverted to in the Declaration of Independence as the Creator's endowment of the "unalienable right" to "life, liberty and the pursuit of happiness." It was carried into the Preamble of the Constitution by its statement of purpose to "establish justice" and "promote the general welfare." The precept was reiterated by the United States Supreme Court when it declared that government "owes a duty to the people . . . to maintain peace and order and to assure the just enforcement of law." (*Hamilton* v. *Regents,* 293 U.S. 245, 262 [79 L.Ed. 343, 353, 55 S.Ct. 197].) The "right of personal security" found in our law is a "natural right" which is "inherent and inalienable." (16 C.J.S., Constitutional Law, §§ 199, 205, pp. 975, 1014; and see authority there collected.)

It is certain that when the first Ten Amendments were proposed to, and ratified by, the several states, all concerned had in mind the common law vow that the safety of the people from criminal and other aggression was guarded by "the highest law." Inherent in this pledge was the *right of the people* to governmental protection from crime and violence. This right was expressly preserved by the Ninth Amendment, which provid-

ed: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

Nothing is seen in the Constitution or its amendments which expressly, or by any reasonable implication, suggests that in the judicial enforcement of the criminal law, and hence vindication of the right to personal security and protection from crime, the People are to be placed in an unfavorable position among litigants. Nor does it appear that the Fifth Amendment requires suppression of the truth in favor of the accused, in such contexts as appear in *Prudhomme,* and here. Indeed, the principle that "the safety of the people is the supreme law," reconfirmed to the people by the Ninth Amendment, would indicate the contrary. At least, and from any view, that valued right is entitled to at least equal dignity and respect; neither should be permitted to dominate, or abrogate, the other. And where necessary, and possible, they should be harmonized. (*Serrano* v. *Priest,* 5 Cal.3d 584, 596 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]; *Edler* v. *Hollopeter,* 214 Cal. 427, 430 [6 P.2d 245].)

*Prudhomme*'s interpretation is not mandated by prior decisions of the courts of this state. The relevant rule was expressed in *People* v. *Trujillo,* 32 Cal.2d 105, 112 [194 P.2d 681] (cert. den., 335 U.S. 887 [93 L.Ed. 426, 69 S.Ct. 236]), in this manner.

"Wigmore, in an exhaustive and scholarly discussion of the history and policy behind the provision of the federal Constitution, which is substantially the same as the California mandate, concludes that the object of the protection 'is the employment of legal process to *extract from the person's own lips* an admission of his guilt, which will thus take the place of other evidence . . . .

" 'In other words, it is not merely any and every compulsion that is the kernel of the privilege, in history and in the constitutional definitions, but *testimonial compulsion.*' "

To the same effect see *People* v. *Ellis,* 65 Cal.2d 529, 533 [55 Cal.Rptr. 385, 421 P.2d 393]; *People* v. *Lopez,* 60 Cal.2d 223, 244 [32 Cal.Rptr. 424, 384 P.2d 16] (cert. den., 375 U.S. 994 [11 L.Ed.2d 480, 84 S.Ct. 634]); *People* v. *Haeussler,* 41 Cal.2d 252, 257 [260 P.2d 8] (cert. den., 347 U.S. 931 [98 L.Ed. 1082, 74 S.Ct. 533]); *People* v. *Lane,* 240 Cal.App.2d 634, 640 [49 Cal.Rptr. 712]; *People* v. *Sowers,* 204 Cal.App.2d 640, 645 [22 Cal.Rptr. 401]; *People* v. *Chapman,* 151 Cal.App.2d 59, 63 [311 P.2d 190] (cert. den., 355 U.S. 916 [2 L.Ed.2d 275, 78 S.Ct. 345]).

These several authorities found no Fifth Amendment transgression to result from a defendant's *nontestimonial* compulsion even where reasonably calculated to "lighten the prosecution's burden of proving its case in chief." And it will be noted that *People* v. *Trujillo, supra,* 32 Cal.2d 105, and *People* v. *Haeussler, supra,* 41 Cal.2d 252, found their respective interpretations responsive to both the state and federal Constitutions.

Furthermore, it will be observed that *Prudhomme*'s denial of discovery by the People, where the disclosure "conceivably might lighten the prosecution's burden of proving its case in chief," appears to be unsupported by *People* v. *Schader,* 71 Cal.2d 761 [80 Cal.Rptr. 1, 457 P.2d 841], the authority relied upon. *Schader* (p. 770) states that "The People must 'shoulder the entire load' of their burden of proof in their case in chief, *without assistance either from the defendant's silence or from his compelled testimony.*" (Italics added.) Neither in *Prudhomme,* nor in the case at bench, was the discovery order calculated to exploit either the accused's "silence" or "his compelled testimony," a purpose which would obviously be in derogation of the Fifth Amendment, as widely interpreted.

Nor, in my respectful opinion, is *Prudhomme*'s rationale supported by the holdings of the United States Supreme Court. That court has consistently held that the Fifth Amendment "protects only against forced individual disclosure of a *'testimonial or communicative character.'*" (Italics added; *United States* v. *Nobles,* 422 U.S. 225, 233, fn. 7 [45 L.Ed.2d 141, 151, fn. 7, 95 S.Ct. 2160]; see also *Gilbert* v. *California,* 388 U.S. 263, 266 [18 L.Ed.2d 1178, 1182, 87 S.Ct. 1951]; *United States* v. *Wade,* 388 U.S. 218, 222 [18 L.Ed.2d 1149, 1154, 87 S.Ct. 1926]; *Schmerber* v. *California,* 384 U.S. 757, 761 [16 L.Ed.2d 908, 914, 86 S.Ct. 1826].) Under that rule, forced disclosures of a "communicative character" are those "which [make] a suspect or accused the *source* of 'real or physical evidence.'" (*Schmerber* v. *California, supra,* p. 764 [16 L.Ed.2d p. 916]; *United States* v. *Wade, supra,* p. 223 [18 L.Ed.2d p. 1155]; italics added.) The discovery order here at issue requiring the defendant to divulge previous statements of *prosecution witnesses* did not purport to make him the *source* of real or physical evidence.

Finally, I believe the precise question before this court is resolved by the recent decision of the United States Supreme Court in *United States* v. *Nobles, supra,* 422 U.S. 225.

The high court first iterated earlier authority on the policy considerations of discovery in criminal cases (pp. 230-231 [45 L.Ed.2d p. 149]): " 'We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense.' "

The court then, citing abundant authority, pointed out (p. 233 [45 L.Ed.2d pp. 150-151]): "The Fifth Amendment privilege against compulsory self-incrimination is an 'intimate and personal one,' which protects 'a private inner sanctum of individual feeling and thought and proscribes state intrusion to extract self-condemnation.' . . . As we noted in *Couch* [409 U.S. 322 (34 L.Ed.2d 548, 93 S.Ct. 611)], at 328, the 'privilege is a *personal* privilege: it adheres basically to the person, not to information that may incriminate him.' "

In *United States* v. *Nobles,* as in the case before us, the discovery order required defendant to produce previous statements of a prosecution witness. The high court stated (p. 231 [45 L.Ed.2d p. 149]): "Decisions of this Court repeatedly have recognized the federal judiciary's inherent power to require the prosecution to produce the previously recorded statements of its witnesses so that the defense may get the full benefit of cross-examination and the truth-finding process may be enhanced. [Citations.] *At issue here is whether, in a proper case, the prosecution can call upon that same power for production of witness statements that facilitate 'full disclosure of all the [relevant] facts.' "* (Italics added.)

The court continued (pp. 233-234 [45 L.Ed.2d p. 151]): ". . . [trial] court's order was limited to statements allegedly made by third parties who were available as witnesses to both the prosecution and the defense. [Defendant] did not prepare the report, and there is no suggestion that the portions subject to the disclosure order reflected any information that he conveyed to the investigator. The fact that these statements of third parties were elicited by a defense investigator on [defendant's] behalf does not convert them into [defendant's] personal communications.

Requiring their production from the investigator therefore would not in any sense compel [defendant] to be a witness against himself or extort communications from him.

*"We thus conclude that the Fifth Amendment privilege against compulsory self-incrimination, being personal to the defendant, does not extend to the testimony or statements of third parties called as witnesses at trial."* (Italics added.)

**SIMS, J.**—I concur in the decision denying the People's application for a writ in proceeding 1 Civil 37380. I dissent from so much of the decision as grants the petitioner relief ·in proceeding 1 Civil 37300 from the condition imposed by the trial court. In my opinion the majority opinion has failed to distinguish between discovery of information which the defense has secured from persons known to and interviewed by the prosecution, and information known only to the defense obtained from witnesses unknown to the prosecution. The court is not directing the defense to disclose any privileged matter. The witnesses concerned are those who have already given oral or written· statements to either investigators or attorneys of the district attorney's office. The prosecution is free to reinterview the witnesses and ascertain from them whether they were interviewed by the defense and if so what they said. If such matters were incorrectly reported by the witness, the prosecution may be in the dark about some impeaching material or some statement favorable to the defense which was elicited in the defense interview. The release of that information is not self-incriminatory, but is necessary for the ascertainment of the truth, and in many cases could assist in settlement of the case.

In *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320 [85 Cal.Rptr. 129, 466 P.2d 673], the court applied the rule applicable to a witness' claim of the privilege against self-incrimination, i.e., "in ruling upon a claim of privilege, the trial court must find that it clearly appears from a consideration of all the circumstances in the case that an answer to the challenged question cannot possibly have a tendency to incriminate the witness. [Citations.]" (2 Cal.3d at p. 326.) It then stated, "Applying the foregoing test to the discovery order in the instant case, neither the order nor the record below enables us to say that it clearly appears that disclosure to the prosecution of the names, addresses and expected testimony of *petitioner's witnesses* cannot possibly tend to incriminate her. Unlike the situation in *Jones,* [*Jones* v. *Superior Court* (1962) 58 Cal.2d 56 (22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213)] the order

herein is not limited to any particular defense or category of witnesses from which a court could attempt to determine its incriminatory effect. It requires no great effort or imagination to conceive of a variety of situations wherein the disclosure of the expected testimony *of defense witnesses,* or even their names and addresses, could easily provide an essential link in a chain of evidence underlying the prosecution's case in chief." (*Id.,* italics added, fn. omitted.) In this case the cards are on the table—the witnesses are known, their credibility may be a factor, but the disclosure of factors bearing on that credibility or the scope and powers of their ability to observe, retain, recall and relate certainly does not infringe on the defendant's privilege against self-incrimination.

As pointed out in *United States* v. *Nobles* (1975) 422 U.S. 225 [45 L.Ed.2d 141, 95 S.Ct. 2160], "In this instance disclosure of the relevant portions of the defense investigator's report would not impinge on the fundamental values protected by the Fifth Amendment. The court's order was limited to statements allegedly made by third parties who were available as witnesses to both the prosecution and the defense. Respondent did not prepare the report, and there is .no suggestion that the portions subject to the disclosure order reflected any information that he conveyed to the investigator. The fact that these statements of third parties were elicited by a defense investigator on respondent's behalf does not convert them into respondent's personal communications. Requiring their production from the investigator therefore would not in any sense compel respondent to be a witness against himself or extort communications from him." (422 U.S. at pp. 233-234 [45 L.Ed.2d at p. 151].

Nor is there any denial of due process of law in imposing the conditions on the defendant's right to discovery. In *United States* v. *Nobles, supra,* the defendant objected to the sanction proposed by the court which precluded use of the witness' testimony if the investigator's report was not produced. The court observed, "Respondent's argument that this ruling deprived him of the Sixth Amendment rights to compulsory process and cross-examination misconceives the issue. The District Court did not bar the investigator's testimony. [Citation.] It merely prevented respondent from presenting to the jury a partial view of the credibility issue by adducing the investigator's testimony and thereafter refusing to disclose the contemporaneous report that might offer further critical insights. The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a

justification for presenting what might have been a half-truth." (*Id.,* at p. 241 [45 L.Ed.2d at p. 155].) From the foregoing it is clear that the defense reports would be available if the defense investigator or attorney attempted to impeach the witness in question. The pursuit of the truth indicates that such information should be available to both sides before trial.

I am mindful that in *Prudhomme* the court unfortunately stated "[I]t is apparent that the principal element in determining whether a particular demand for discovery should be allowed is . . . whether disclosure thereof conceivably might lighten the prosecution's burden of proving its case in chief." (2 Cal.3d at p. 326.) Moreover, in *Reynolds* v. *Superior Court* (1974) 12 Cal.3d 834 [117 Cal.Rptr. 437, 528 P.2d 45], the court recognized, " . . . it cannot be gainsaid that *Prudhomme* put this court on record as being considerably more solicitous of the privilege against self-incrimination than federal law currently requires." (12 Cal.3d at p. 843.)

In my opinion the defendant should not be able to assert that the disclosure of his reports on witnesses who have been interviewed by the prosecution "might lighten the prosecution's burden of proving its case in chief" when to do so may lead to the suppression of the truth or the production of half-truths. There is no constitutional or statutory prohibition against such a conditional order as was made in this case, and in my opinion the proper administration of criminal justice, and the ascertainment of the truth not only countenances such an order but also encourages it.

I share the views of Elkington, J. in his concurring opinion, but since *Prudhomme* dealt with the defendant's own witnesses, and we are here concerned with the prosecution's witnesses, I do not believe that *Prudhomme* is controlling.

I would deny both petitions in full.

A petition for a rehearing was denied February 10, 1976, and the petition of the real party in interest in No. 37300 for a hearing by the Supreme Court was denied March 10, 1976. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.